## ANGELINE BERRYMAN v. GEORGE BERRYMAN.

*Divorce—Habitual drunkenness—Cruelty—Alimony.*

1. The facts, even if true, that a wife is shown by the testimony not to be of the most refined character and that she has not always been truly lady-like in her behavior, but at times when in anger has been guilty of profanity, and has not remonstrated with her husband as she ought, or rebuked him for using liquor to excess, furnish no adequate excuse for the abuse which he is shown to have heaped upon her in his drunken moods, which have been too frequent not to be habitual.

2. The fact that the husband is a good farmer, and kind, when sober, to his family, will not weigh in the scale to balance the admitted fact that he is the opposite when under the influence of liquor, especially when such influence grows stronger day by day.

3. Where the testimony shows a defendant to be worth from $10,000 to $15,000, which his wife has helped to accumulate, she having lived a frugal, abstemious life and by her industry and economy saved his earnings; that he has given several thousands of dollars to his children who are all grown up and married, except a daughter aged sixteen years, who is living with her mother, and he admits receiving $600 from his wife soon after their marriage,

  *Held,* that the sum of $4,500 awarded to her as permanent alimony was not excessive.

Appeal to Genesee. (Newton, J.) Argued January 15, 1886. Decided February 10, 1886.

Appeal from decree of divorce by defendant. Affirmed. The facts are sufficiently stated in the opinion.

*Clarence Tinker* and *George H. Durand,* for complainant:

Where the testimony is taken before the circuit judge who has an opportunity of judging of the credibility of the witnesses who appear before him, his decree will not be changed unless material errôr is found in the case: *McGonegal v. McGonegal,* 46 Mich. 66; *Nicholas v. Nicholas,* 50 Mich. 162. The defendant is shown to be an habitual drunkard under the law: *Magahay v. Magahay,* 35 Mich. 210; *Mahone v. Mahone,* 19 Cal. 627.

• The allegation of extreme cruelty is fully proved. Defendant's conduct has been such as to endanger complainant's life and health and render co-habitation with him unsafe, which is extreme cruelty: *Perry v. Perry,* 2 Paige, 500; *Briggs v. Briggs,* 20 Mich. 4. Extreme cruelty is such conduct as renders the life of the injured party miserable and unendurable: *Goodman v. Goodman,* 26 Mich. 417. [Balance of brief confined to a discussion of the testimony. REPORTER.]

*Long & Gold* and *A. O. Wood,* for defendant:

This Court has held (in *Nicholas v. Nicholas,* 50 Mich. 162) that it ought to be fully persuaded that it must have reached a different conclusion, had it occupied the position of the court below and been favored with all the advantages possessed by that court for judging rightly. We seek, therefore, to submit a fair abstract of all the material and competent testimony upon the part of the complainant, especially, in the hope that this Court will find that it would have reached a different result from that arrived at below.

We are not aware that this Court has ever undertaken to define habitual drunkenness except possibly in *Magahay v. Magahay*, 35 Mich. 210, where it is in substance held: "That the habit of indulging in intoxicating liquors, having become so firmly fixed that one becomes intoxicated as often as the temptation is presented by his being in the vicinity where intoxicating liquors are sold, and he makes no vigorous effort to overcome the habit; or his will has become so enfeebled by indulgence that resistance is impossible"—he may then be said to be "an habitual drunkard." Our own judgment is that the misfortune that has come to this family is to be traced, not to the convivial habits of the defendant, but to the fact that the complainant has lately withheld from her husband the love, regard and assistance he had a right to expect from her, which we think the testimony sufficiently indicates.

*A. C. Baldwin*, of counsel for defendant:

As to what constitutes habitual drunkenness, cited: *Magahay v. Magahay*, 35 Mich. 210; *Kline v. Kline*, 50 Mich. 438; *Batchelder v. Batchelder*, 14 N. H. 380. When the case shows merely a family quarrel a bill for divorce has been invariably dismissed: *Bishop v. Bishop*, 17 Mich. 211; *Cooper v. Cooper*, Ib. 205; *Bennett v. Bennett*, 24 Mich. 482; *Rose v. Rose*, 50 Mich. 92. This case does not come within the rules laid down in *McGonegal v. McGonegal*, 46 Mich. 66; *Corrie v. Corrie*, Ib. 235; *Whitmore v. Whitmore*, 49 Mich. 417; *German v. German*, 57 Mich. 256. The alimony allowed was excessive, being for nearly one-half of defendant's entire possessions. In case of his death complainant would probably receive all of defendant's personal property, and the use of most of the land during her life, but the court gave her this sum in gross. In addition [How. Stat. § 6246] gives her dower: *Hamilton v. Hamilton*, 37 Mich. 606, 607; *Cummings v. Cummings*, 50 Mich. 305.

MORSE, J. This is a proceeding for divorce. The complainant charges habitual drunkenness and extreme cruelty against the defendant, which he denies.

A lengthy discussion of the evidence will, in our opinion, serve no useful purpose. The facts, in brief, are that these parties, both now over the age of sixty years, were married in 1849 and lived together until 1883, at which time five

grown-up children were living, the oldest thirty-one years of age and the youngest about sixteen, four married and living away from home, and Lizzie, the youngest, going away and residing with her mother.

The evidence shows the defendant to be a man who, in his own language, has always been in the habit of taking a drink whenever he "was a mind to, or felt like it." The habit has naturally grown upon him until, for the last six or seven years before the filing of complainant's bill, in October, 1883, he has been in the habit of getting more or less intoxicated when he went to the village of Fenton, which averaged once or twice a week. There is no evidence of his ever being so drunk that he could not drive his team home, or put it out after he arrived there; but he has been known to be so much under the influence of liquor that he would lie down and go to sleep in the barn, and once he was found in the straw stack and taken at first for a hog.

Whenever he came home filled with liquor he was morose and ugly, and sometimes brutal. He was profane and violent, not only against his family, but the dumb beasts about his premises. He once or twice broke furniture and dishes, and on one occasion used violence against his wife, and often threatened her, at one time driving her and Lizzie out of the house with a horsewhip. There is no doubt but his course of conduct was such, not only to rob his home of all peace and happiness, but to render it unsafe and dangerous for his wife to longer remain with him.

It was admitted by all, not excepting the defendant, that the complainant was a hard-working, frugal and industrious woman, and a good wife and mother. It also appears that the defendant was a good husband and father when sober, and, in despite of his drinking habits, one of the best and most prosperous farmers in the neighborhood, keeping his farm, fences, and buildings in neat condition and good repair.

It is urged against the complainant that the testimony shows her not to be of the most refined character; that she has not always been truly lady-like in her behavior, and was at times herself, in anger, guilty of profanity; that she had

acquiesced somewhat in the drinking habits of her husband, and had not remonstrated with him as she ought, or rebuked him for using liquor to excess. Be this as it may, it furnishes no adequate excuse for the abuse that defendant has heaped upon her in his drunken moods, which are too frequent not to be habitual. Nor does the fact that he is a good farmer, and kind when he is sober, to his family and his stock, weigh in the scale to balance the admitted fact that he is the opposite when under the influence of liquor, especially when such influence grows more frequent and stronger every day he lives.

Without going further into detail, we are satisfied the complainant ought to have her decree as granted by the court below.

She was awarded $4,500 as permanent alimony and $200 as solicitor's fees. This is alleged to be too large a sum. We think not, under all the circumstances of the case. The defendant is shown to be worth from $10,000 to $15,000, which she has helped to accumulate. He claims that besides this he has given some thousands of dollars to his children. Complainant claims that she let defendant have $1,150, soon after their marriage, of her own money, which he has never repaid. He admits having $600.

The proofs show that she has lived a frugal, abstemious life, by her industry and economy preserving and saving the earnings of her husband, and she is at least entitled to the amount decreed her.

The decree below is therefore affirmed, with costs of this Court, and an additional solicitor's fee of $70.

The other Justices concurred.