## FRANCES ROSSMAN v. CARL ROSSMAN.

*Alimony—Allowance of pending divorce proceedings—As also amount and manner of payment—Left to judicial discretion of circuit judge—Which discretion will not be coerced in absence of strong and positive showing of its abuse— Which showing is not made in this case.*

The allowance of *temporary* alimony is placed by the statute with the circuit judge, the *amount* of such allowance, and the *time* and *manner* of payment, being governed by his *discretion*; and his action will not be *coerced* by the appellate Court without a *strong* and *positive* showing of an abuse of *judicial* discretion.    On review of the facts

in this case, *held*, that *such* discretion has not been abused. [1] (Morse, J., dissents.)

Appeal from Ingham. (Gridley, J.) Argued July 1, 1886. Decided July 15, 1886.

Appeal from order adjudging defendant guilty of contempt for non-payment of temporary alimony. Affirmed. The facts are stated in the opinion.

*Hewett & Freeman*, for complainant.

*Huntington & Henderson*, for defendant.

CHAMPLIN, J. On the twelfth day of October, 1885, complainant filed her bill of complaint against defendant for a divorce from the bonds of matrimony, and for permanent alimony.[2] She alleged that she was 28 years of age; that she was married to defendant in January, 1873; that they have one child, aged eight years, named Grace J.; that defendant has, since their marriage, become an habitual drunkard; and that he has been guilty of treating her with extreme cruelty. Several specific acts of cruelty are alleged, consisting of personal violence, abusive language, and threats to kill her.

She states that he owns 54 acres of very choice farming lands, free and clear from incumbrances, which she valued at $4,000, and personal property, which she valued at $1,000; and she says that, by their joint labor, she helped to earn the most of it; and the defendant is free and clear from indebtedness, and has money besides, and has an annual income from said property, as she is informed and believes, of $500.

She prayed for an injunction, until the further order of the court, enjoining him from conveying away, mortgaging, or otherwise disposing of or incumbering his property, real or personal, or any part thereof, and from interfering with

---

[1] See *Low v. Mills*, 61 Mich. 35 (head-note 5), for a case where exercise of discretion is held unwarranted.

[2] When not excessive, see *Berryman v. Berryman*, 59 Mich. 605.

complainant, and her taking a sewing-machine and household furniture from the house.

The bill further alleges that, from fear of personal violence, she left defendant's house, with her child, on the tenth day of October, 1885.

An injunction was granted by the circuit judge, enjoining defendant in accordance with the prayer of the bill.

October 26, 1885, a petition was filed by the complainant for temporary alimony, in which she set forth the fact of the filing of her bill praying for a divorce, and that defendant had entered an appearance therein; that at the time she was compelled to leave the defendant she had but $40 in money, which constituted all the means she then had, or has since had; that she was wholly destitute of means of supporting herself and their infant child, and of carrying on the prosecution of the suit, and paying the cost and expenses attending the same; that she had secured board for her child with Nelson Rossman, a brother of defendant; and restating the property and means of defendant.

This application was opposed by defendant upon his own and the affidavit of Wilber H. Rossman.

A hearing was had on the sixth day of November, 1885, and the court made an order allowing temporary alimony and expenses, and ordered defendant to pay complainant $10 every four weeks, commencing on the second day of November, 1885, the first payment to be made five days after service of the order, and thereafter every four weeks, dating from November 2; also that he pay $30 solicitor's fees in twenty days from service of a copy of the order, and $15 at least five days prior to the time fixed for taking proofs for expenses; and such further sums for expenses in taking proofs after the $15 shall have been exhausted, upon presentation of a taxed bill of costs of the same.

It was further ordered that the injunction be so modified as that defendant may sell the grain, roots, vegetables, and apples raised on his farm the present season, and also his fat hogs and young cattle, to enable him to raise money with which to comply with this order. Under this order defend-

ant paid to complainant's solicitor $30, and to complainant $20.

On November 28 defendant filed his answer, denying the charges of drunkenness and cruelty ; and charging complainant with unseemly deportment with other men ; in persistent and stubborn conduct in keeping up and maintaining unseemly social relations with other men, being out at unreasonable hours at night, leaving defendant at home to care for their child alone.

On November 28 replication was filed, and on December 15 a motion was made for an increase of alimony. This motion was based upon the affidavit of complainant, and the affidavits of Isaac P. Mosley, M. S. Miller, Stephen E. Miller, and Grove H. Wolcott. The motion was resisted, and defendant filed his own affidavit in opposition thereto.

A hearing was had on the twenty-first day of December, 1885, and the circuit judge made an order increasing the allowance for temporary alimony to five dollars a week, to be computed from the thirtieth of November, 1885, to be paid on the twenty-eighth day of December, 1885, and every four weeks thereafter, in advance, during the pendency of the suit, until the further order of the court; and defendant was further ordered to pay to complainant the sum of $20 on the twenty-eighth day of December, 1885, with which to procure clothing for their infant child, Grace.

This order was served on defendant the twenty-first day of December, 1885.

On March 6, 1886, Messrs. Hewett & Freeman, solicitors for complainant, drew a written notice of which the following is a copy :

" THE CIRCUIT COURT FOR THE COUNTY OF INGHAM, IN CHANCERY.

" *Frances Rossman, Complainant, v. Carl Rossman, Defendant.*

" Dated MARCH 6, 1886.

" SIR : In this cause you will please to take notice that on the twenty-second day of February, A. D. 1886, there was

due to Frances Rossman, the above-named complainant, from you, Carl Rossman, the above-named defendant, the sum of sixty dollars, as and for temporary alimony, and also the further sum of twenty dollars with which to furnish clothing for said complainant and the infant child of yourself and complainant, under and by the terms of an order of said court made in this cause on the twenty-first day of December, A. D. 1885, with a copy of which you have been served; and that the whole or no part of either sum has been paid by you, or for you, to said complainant, or to any one for her, each of which amounts are due to said complainant by virtue of said order; and that, for the reason that said several amounts are now due and unpaid, you are hereby requested to pay the same, and we hereby demand the payment of the same.

"Yours, etc.,       HEWETT & FREEMAN,
                       "Complainant's Solicitors.

" *To Carl Rossman, Defendant.*"

They also indorsed upon the back thereof the following:

"*To Carl Rossman, the within-named Defendant :* Please pay the moneys claimed within to be due to Frances Rossman, the within-named complainant, to F. G. Fifield, who is the bearer of this, and who is hereby authorized to demand and receive said moneys, and to receipt to you for the same.

"Yours, etc.,       HEWETT & FREEMAN,
                       "Complainant's Solicitors.

"*Dated March 6, 1886.*"

Fifield, on the sixth of March, 1886, served upon defendant the foregoing notice and indorsement, and at the same time demanded of defendant the payment to him of the sum of $80 for Frances Rossman, which payment defendant refused to make. Upon application based upon the above demand the court issued an order to the defendant to show cause why he should not be committed for contempt. Defendant showed cause by affidavits of himself and others. Counter-affidavits were also filed, and upon hearing the court adjudged him guilty of the misconduct alleged against him, and that he was in contempt therefor; ordered him to pay $60 for alimony, and $20 for clothing, a solicitor's fee of $10, and costs of the motion, taxed at $7.90, in 10 days after

personal service of the order and demand of payment, and, in default, that he stand committed to the common jail until the same be paid, unless the court should see fit sooner to discharge him.

The defendant appealed to this Court from the order of commitment, and the entire proceedings are before us.

It is claimed by the counsel for defendant—

" That the last order, increasing the amount of alimony upon the facts before the court, was not a fair exercise of judicial discretion; that it was so far from it, though not so intended, as to amount to what is called an abuse of discretion."

In this we do not agree.

When the first order was applied for and made the complainant had taken her child, Grace, to Nelson Rossman's, a brother of defendant, to be cared for, and she did not suppose that any charge would be made against her for the board and care of Grace by him. But after the child had been there five weeks, he presented a charge against complainant of $10 for boarding the child. She requested him to present the bill to his brother, the defendant, for payment, but he refused, and insisted upon complainant's paying the amount, which she did, and then procured the child to be boarded in the family of Mr. M. Miller, in Onondaga, for which she is obliged to pay two dollars a week. This would leave her only fifty cents a week for her own maintenance.

She showed that she had sought for and had failed to find employment, and had hitherto been unable to earn anything for her own support. She showed that defendant was an unfit person to have the care and custody of their daughter, Grace. She also showed the necessity of procuring wearing apparel for the child; and we are at a loss to perceive any reason for saying that the allowance made by the last order was an abuse of discretion, if tested by the needs of complainant and the child. Nor do we see any ground for complaint, when we take into consideration the means and ability of defendant to pay the amount allowed.

It is unnecessary to repeat here the showing and counter-

showing as to the property in his hands. We are satisfied that it was not the lack of means, but of effort, based upon a determination not to comply with the order, that has prevented the payment. The making of these allowances, in matters of divorce, is placed by the statute with the circuit judge. The amount to be allowed, and time and manner of payment, are to be governed by his discretion, and we should hesitate to override his action without a strong and positive showing of an abuse of judicial discretion. No such showing is made in this case, and the order appealed from is affirmed, with costs, and the case must be remanded to the court below for further proceedings.

CAMPBELL, C. J., and SHERWOOD, J., concurred.

MORSE, J. (*dissenting*). In divorce suits the man has some rights as well as the woman.

We know nothing of the merits of the controversy in the main case, and have no right to assume any knowledge thereof.

The allegations of the bill of complaint are denied by the answer. The parties, therefore, stand equal before us, and we have only these facts to consider:

1. That the parties have separated, and the wife is seeking a divorce.

2. That she has no property, and he has some.

3. That, under the law and practice in such cases, the court will force the defendant, so far as it is reasonable to do so, to support complainant, or aid in her maintenance, during the pendency of the suit, and to pay her reasonable solicitor's and witness fees in the prosecution of her cause.

The amount that he shall pay must be governed by many circumstances peculiar to each case, depending upon his means, the social rank and habits in life of the parties, the health of the wife, and other things.

These allowances, called " temporary alimony," are largely in the discretion of the court, and ordinarily this Court will not interfere with the orders made in reference thereto in the court below.

But where the personal liberty of a party is involved, as in this case, it is both our right and duty to carefully examine the proceedings, and, if not warranted by the circumstances or acts of the parties, any commitment or threatened commitment to jail of the defendant should not be upheld.

It is the duty of courts to jealously guard any encroachments upon the right of the citizen to personal liberty, and, especially in summary proceedings, to see to it that no injustice is done in this respect by any action, judicial or otherwise, founded upon the *ex parte* affidavits of interested or biased persons, where no cross-examination is had or permitted.

In this case, within three days after complainant left defendant's house, her bill of complaint was prepared and filed. She then promptly moved for alimony, and received an allowance of $30 solicitor's fees, and $15 witness fees, and a weekly stipend for her support. She also procured an order of the court enjoining defendant from in any manner disposing of, selling, or incumbering any of his property.

I have found in my experience as a practitioner that it has been altogether a too common proceeding in divorce suits for the complainant, on pretext that the defendant was about to dispose of his property to her disadvantage, to tie up by injunction every dollar of his property, and then move immediately for alimony, and again for additional alimony. In such cases, if a good round sum is allowed her for solicitor's fees and for her maintenance, the suit is apt to linger, as in this case, and trouble usually ensues as to the payment and collection of the allowances.

To enjoin a defendant from selling or mortgaging any of his property, and then command him to raise money or go to jail, does not seem to me to be a very proper or just proceeding.

In this case the defendant has a small farm of 54 acres, upon which, according to showing of complainant, he raised, in the season of 1885, 207 bushels of wheat and about $50 worth of hay. His other crops amounted to nothing for

revenue, and his apple crop was frozen, as he claims, because he could not dispose of it under the injunction. He has 14 acres of wheat upon the ground. According to complainant's affidavits, he had sold 157 bushels of his wheat for about $125 before she left. She admits taking $40 away with her.

December 21, 1885, she had her allowance increased to five dollars per week, and the injunction was modified November 6, 1885, so that defendant might sell the grain and roots raised on his farm that year, and his fat hogs and young cattle, to pay alimony.

It will be seen at once that, from the date of the first order, the defendant has had two households to provide for, and it is evident to any one familiar with the annual income of the small farmers of this State that the $260 per year, for the maintenance simply of his wife and child away from him, is more money, in all probability, than he has ever been able to earn from said farm in any one year, over and above the expenses of living, taxes, etc., and more than he can earn hereafter.

When brought before the court for contempt he made the showing that all his personal property was used up except a team and wagon, one cow, one pig, one calf, some chickens, and a few farming tools. This showing was not disputed. He accounted for his property, and its use, except that he had used $25 to buy himself clothing, and about $40 in other necessary expenses of living, which he did not itemize.

The injunction upon his real estate remained, and was not removed or modified in any way by the court.

To require him to pay $98 in ten days, or be committed to the county jail until he paid the same, under these circumstances, seems to me to be clearly unjust. If the court had modified the injunction so that he could have mortgaged the farm, I should find no fault with the proceedings, though, under the facts as to the property, and considering that the wife ought to do something towards maintaining herself, the

weekly allowance, the parties living in the country, seems to
be too large in amount.

It is intimated by Mr. Justice SHERWOOD, in his opinion
in *Froman v. Froman*, 53 Mich. 584, that the injunction in
a case like this does not stand in the way of the defendant's
raising money by mortgage, if it is for the purpose of pay-
ing alimony.

I cannot agree with him in such opinion, because the hard
facts in daily life dispute it. The theory may be plausible
that the injunction is for the benefit of the complainant,
and therefore does not interfere with a sale or mortgage for
her benefit, but the fact is that no money lender will touch
a security given under such circumstances. And suppose,
for instance, in this case, the defendant goes to borrow the
money for the ostensible purpose of paying up this alimony,
what security has the lender that it may not be used for
something else, and what would his mortgage be worth then
if the lender knew of the injunction when he received it?
What security has the lender in any event that the court
will ratify the action of defendant? If it be the intention
and purpose of the court not to forbid an incumbrance to
pay alimony, why not say so, and not leave the matter in
uncertainty? Money is not yet so cheap in this country
that people are anxious or even willing to loan it upon secur-
ity offered and taken in violation of law, and liable, at the
option of the court, to be declared illegal and worthless.

I fancy the defendant going to some money lender and
saying:

" The order of the court is all right; it don't mean to pre-
vent my giving a mortgage to obtain money to pay its
order."

The answer would probably be:

"If the court is willing you should give this security, why
does it not say so, and remove its prohibition?"

If this man's story of his financial condition be true, and
there is no evidence but hearsay and conjecture to dispute it,
it will be impossible for him to comply with this order unless

some friend will step into the breach, and take the risk of lending him the money without security.

The order modifying the injunction should not only have provided that he have leave to mortgage the farm to pay alimony, but that the wife should join with him, as there is but little above a homestead in it.

This suit has run from October until June. The $15 for witness fees has not been called for. No steps have been taken to bring it to trial. It may be, as is sometimes the case, that the allowance of alimony has been large enough to have a tendency to retard the final issue of this suit. The complainant may be satisfied to live as she is, if she can get the alimony promptly.

For these reasons, I cannot join in ordering the defendant to move, unless his hands and feet are untied. He should not, in my opinion, be financially bound, and then punished for not using his freedom.