MURRAY v. MURRAY.

DIVORCE—INTOXICATION—EXTREME CRUELTY.
 Where defendant became frequently intoxicated, struck and
 ill-treated his wife, calling her vile names, his acts authorize
 the granting of a divorce on the ground of cruelty, notwith-
 standing evidence tending to show that she acquiesced in his
 drinking and drank with him.[1] MCALVAY and OSTRANDER,
 JJ., dissenting.

Appeal from Ottawa; Padgham, J.  Submitted Janu-
ary 12, 1912.  (Docket No. 57.)  Decided March 29, 1912.

Bill by Carrie Murray against Thomas W. Murray for
divorce.  From a decree dismissing the bill, complainant
appeals.  Reversed.

*Corie C. Coburn*, for complainant.

*Lillie & Osterhous*, for defendant.

MOORE, C. J.  I cannot agree with the conclusion
reached by Justice OSTRANDER.  He sufficiently states
the averments of the bill of complaint.  He also states in
a general way what the testimony shows as to the striking
of the complainant by defendant, and of the vile names
he called her.  It will not be necessary to detail the testi-
mony in that respect further than to say that defendant,
whenever under the influence of liquor, and this happened
often, was ugly toward complainant and called her vile
names, and struck her a good many times, leaving black
and blue marks upon her person.  I do not find anything
in her conduct that justified his action.

The language of the court in *Berryman* v. *Berryman*,
59 Mich. 605 (26 N. W. 789), is apropos here:

 " It is urged against the complainant that the testimony

---

[1] Drunkenness as affecting divorce, see note in 34 L. R. A. 449.

shows her not to be of the most refined character; that she has not always been truly ladylike in her behavior, and was at times herself, in anger, guilty of profanity; that she had acquiesced somewhat in the drinking habits of her husband, and had not remonstrated with him as she ought, or rebuked him for using liquor to excess.  Be this as it may, it furnishes no adequate excuse for the abuse that defendant has heaped upon her in his drunken moods, which are too frequent not to be habitual.  Nor does the fact that he is a good farmer, and kind, when he is sober, to his family and his stock, weigh in the scale to balance the admitted fact that he is the opposite when under the influence of liquor, especially when such influence grows more frequent and stronger every day he lives."

See *Bailey* v. *Bailey*, 121 Mich. 236 (80 N. W. 32); *Utley* v. *Utley*, 155 Mich. 258 (118 N. W. 932).

I think complainant should have been granted a decree. We will consider the question of a disposition of the household goods at the time the decree is settled.

The decree of the court below is reversed, and one may be entered here in accordance with this opinion, with costs to complainant.

STEERE, BROOKE, BLAIR, and STONE, JJ., concurred with MOORE, C. J.

OSTRANDER, J. ( *dissenting*).  The parties were married April 22, 1903.  No children of the marriage are living.  Complainant charges in her bill of complaint that defendant—

"Has been guilty of extreme and repeated cruelty toward your oratrix, that is to say, that a few months after their said marriage, he commenced a course of unkind, cruel, and inhuman conduct toward her, which continued until she was forced to flee for safety and left him on the 3d day of April, 1910, after an all night quarrel and fight; that his cruelty became so repeated and extreme that it rendered it unsafe and improper for her to live with him any longer; that the said defendant is a heavy drinker and often becomes intoxicated, and when in such condition is cruel and abusive; that he has beaten, bruised, pounded, and slapped your oratrix on occasions so numer-

ous that it would be impossible for her to enumerate them; that on the 2d day of April, 1910, he became drunk, came home quarrelsome, and if it had not been for interventions of relatives would have assaulted your oratrix; that about one month before the occurrence of the 2d day of April, 1910, he pounded and struck your oratrix without any provocation whatever; that on the night before Christmas said defendant became intoxicated and struck your oratrix a blow with his fist without any provocation whatever; that the other occasions are too numerous to mention. Your oratrix further represents that the defendant is a man of violent passion and ungovernable temper; that on many occasions he addressed to your oratrix the most opprobrious epithets and threats of personal violence, calling her a 'God damn bitch,' and 'black serpent,' and has repeatedly threatened to take her life; that in consequence of the cruel and inhuman treatment and threats aforesaid, and such conduct as to render it unsafe for her to live with or remain near him, your oratrix was obliged on the said 3d day of April, 1910, to leave the house of the defendant and seek refuge with her friends, since which time she has not dared to return to the defendant's house or live with him."

The bill was originally filed for a separate maintenance, but was amended so as to pray for an absolute divorce. Defendant answered, denying the charges of cruelty. At the hearing he expressed a desire to withdraw his answer and to make no contest. He gave testimony but produced no witnesses in his own behalf. The court dismissed the bill. The testimony of complainant tended to prove that upon the occasion when she left defendant in April, 1910, defendant was drunk and abusive and struck at her during the evening of the previous day, and in the morning when complainant was getting breakfast he asserted that she, or her sister, or both, had hid his whisky, which they denied. He told complainant to produce it or there would be trouble, called her names, and told her to get out of the house and stay out. Complainant then left him. On the preceding Easter eve, the parties went from Grand Haven to Muskegon to spend Easter with a sister of complainant. Defendant had been drinking before they left

Grand Haven and drank more at Muskegon, and at the table there while all were eating supper, without any prelude or premonitory talk, he looked at complainant, uttered an oath, took up a knife, "and was going to throw it at me, and my sister laid her hand on his arm and said, 'Tom, what are you going to do?' and he said, 'Nothing,'" and laid the knife upon the table, "and that was all there was to it." He struck her a good many times, the dates not remembered. Asked if she could give the date of any time when he had struck her, she gave one as the night before Christmas, when they were also at the home of complainant's sister and defendant was drunk. It appears, however, that on that occasion he "struck at her," called her names, and swore at her. Complainant left defendant once some two years before their final separation, remaining away for about four weeks, returning to live with him again in reliance upon his promises that he would be a different man. The charges in the bill of complaint are stated more strongly than the proofs warrant.

By his own admissions defendant was in the habit of becoming intoxicated. He professed that he did not remember much that he said and did while he was intoxicated. He says that he and his wife often boxed and scuffled; she striking him and he her. His testimony tends to prove that his wife habitually drank beer with him, and that on one occasion she and defendant's sister came home intoxicated. For his conduct upon that occasion defendant was arrested, and upon being released charged his wife with some, or all, of the responsibility for his arrest. It resulted in the separation above referred to. We are satisfied, rather by his testimony than that of complainant, that when drunk defendant has mistreated his wife by his language and by offering her personal violence. We are not so well satisfied that he alone ought to be held responsible for the frequency with which he indulged in liquor and the resulting, or attending, quarrels. He

appears to be as truthful a witness as his wife, with less interest in the result of this litigation.

It is said by complainant's solicitor that upon the facts disclosed the case is ruled in her favor by *Berryman* v. *Berryman*, 59 Mich. 605 (26 N. W. 789). The cases are much alike, although it does not appear from the opinion in that case that the wife drank liquor with her husband or ever herself became intoxicated. We think the case must turn upon the conduct of the complainant, and are not so well satisfied that she was blameless as to overrule the trial judge, who had the peculiar advantage of seeing the parties and listening to the testimony.

The decree should be affirmed, but without costs to either party.                    ＇

McALVAY, J., concurred with OSTRANDER, J. BIRD, J., did not sit.