WESTERN UNION TELEGRAPH COMPANY v. BIRGE-FORBES COMPANY.

Decided June 21, 1902.

**1.—Telegraph Company—Cipher Message—Notice of Importance.**

Where a telegraph company received for transmission, from one known to it to be dealing in and selling cotton, and whose messages were all "rush" messages, a message partly in cipher, but commencing, "All right; sell," it was sufficiently charged with notice that the message related to a cotton transaction and was important.

**2.—Same—Stipulation Against Liability—Unavoidable Interruptions.**

Where a contract for the transmission of a message provided that the telegraph company would not be liable for delays arising from unavoidable interruptions in the working of its lines, this would apply to interruptions occurring after the receipt of the message, but would not protect from liability where such interruptions existed at the time the message was received, and the company's agent had knowledge of their interruptions but the sender had none.

**3.—Same—Sender's Knowledge of Line Interruptions.**

Where the sender knew at the time that certain lines were down, but did not know that the company did not have other lines by which the message could be sent, this did not exempt the company from liability for the delay.

**4.—Same—Notice to Sender.**

The mere fact that the telegraph company had posted notices in its office, at the place where persons come to send messages, stating that its wires were down and that all messages would be delayed, would not of itself charge the sender with notice, and there was no error in excluding proof of such fact where actual notice to the sender was not shown.

Appeal from the County Court of Grayson. Tried below before Hon. J. D. Woods.

*Geo. H. Fearons* and *Wilkins & Vinson,* for appellant.

*J. F. Holt* and *C. L. Galloway,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, a corporation engaged in the cotton business, brought this suit against the Western Union Telegraph Company in the County Court of Grayson County, on December 6, 1900, for $901, damages claimed to have been sustained by it on account of the alleged negligence of the defendant in transmitting and delivering a telegraphic message filed at Sherman, Texas, on September 13, 1900, addressed to C. H. Minge & Co., New Orleans, La., signed by the plaintiff, and reading, "All right. Sell bluffing each described amply," it being alleged that the plaintiff thereby lost the sale of 200 bales of cotton, authorized by the message to be sold at 11⅜ cents per pound. C. H. Minge & Co. were cotton brokers and the agents of plaintiff in New Orleans.

The defendant interposed a general demurrer to the petition, which was overruled by the court. Defendant also filed a general denial and specially pleaded that the contract under which the message in question was accepted for transmission contained a stipulation which exempted it from liability.

The case went to trial before a jury on October 29, 1901, and resulted in a verdict and judgment for the plaintiff for $312.50, and defendant has appealed.

1.   Appellant contends that since the message was in cipher and its meaning unknown to defendant's agents, the damages sought to be recovered were too remote and not in contemplation of the defendant at the time it contracted for the transmission and delivery of the message, and upon a breach of contract only nominal damages could be recovered. The petition set out the message and charged that defendant's agents had knowledge of its importance and of the necessity for prompt delivery. The evidence shows that the agents of defendant at Sherman knew at the time they received the message for transmission that the Birge-Forbes Company were cotton merchants at Sherman. They further knew that all cotton messages were "pink" or "rush" messages and notified the defendant's office at Dallas that all Birge-Forbes Company messages were "pink" messages. Prior to delivering the message to defendant, N. B. Birge, of Birge-Forbes Company, called by telephone the office of defendant in Sherman and stated to the person answering the prone that he had an important message to send to New Orleans and asked if the defendant's lines were all right and if he could get the message through promptly. Then he wrote the message and sent it to defendant's office by his office boy. The message was received by Marshall, an employe of defendant. Marshall testified on the trial that he does not recollect whether he had a conversation over the phone about the message or not. Defendant's manager, Stallings, who was present at the office when the message was received, testified that he could not remember whether he had a talk with Birge over the phone about the message or not. It was charged in the pleading that there was sufficient on the face of the message not in cipher to apprise defendant of its importance. The telegram reads: "All right. Sell bluffing each described amply." The words "bluffing" and "amply" are in cipher and defendant's agents did not know what these words meant. When translated the message reads: "All right. Sell one hundred bales of each described at eleven and three-eighths cents per pound." The words "all right" indicate that this was a reply to some previous message. Knowing that the corporation Birge-Forbes Company was dealing in cotton and that all their messages were "rush" messages, the word "sell," which was not in cipher, in connection with the other facts, was sufficient to indicate to the defendant's agents that the message related to a cotton transaction and was important. It is held that notice to the company of the main purpose of the message is sufficient. Telegraph Co. v. Edsall, 74 Texas, 329.

No inquiry was made by the agents of the company seeking any additional information as to its importance. But if this were not so, we are of the opinion that the evidence was sufficient to justify the jury in concluding that the agents of the defendant had actual notice of the importance of the message and of the necessity for dispatch in its transmis-

sion. The testimony of the defendant's agents that they did not remember whether they had a talk with Birge over the phone about the message is of a negative character. Birge testified he had such a conversation, and the jury may have concluded that there was such a conversation and that it had escaped the recollection of the other witnesses.

2. It is contended that the plaintiff having contracted to absolve the defendant from liability for delay in transmitting said message occasioned by the unavoidable interruption in the working of defendants lines, the stipulation was valid, and it was admissible to show, in explanation of and as excuse for the delay, the condition of the defendant's wires, poles, and other instrumentalities and the cause thereof. The contract for the transmission of the message contained the following clause: "It is agreed between the sender of the following message and this company that said company will not be liable in any case for delays arising from unavoidable interruptions in the working of its lines." The usual route for the transmission of messages from Sherman to New Orleans was to its relay office in Dallas and thence to Houston, and from there over its line along the Southern Pacific Railroad to New Orleans; or from Dallas over its line along the Texas & Pacific Railroad to Shreveport and thence to New Orleans. If these were closed, then from Dallas to St. Louis and thence to New Orleans. It was known by defendant's agents, when the message was received by them for transmission that the routes by Houston to New Orleans and by Shreveport to New Orleans were not open for business, as a result of severe storms in that section which had prostrated its wires. It was also known to them that as a result of the condition of defendant's wires between Houston and New Orleans and Shreveport and New Orleans, there had been a congestion of business in the Dallas relay office, and that messages sent to that office would be delayed. The message in question was received by defendant's agents in the evening of September 13th. It was promptly transmitted to defendant's relay office at Dallas and there received at 5:30 p. m., September 13th. It was transmitted from the Dallas office to St. Louis at 5:24 a. m., September 14th, and remained in St. Louis twenty minutes. It was transmitted from St. Louis at 5:43 a. m., standard time, to New Orleans, and received at the office of C. H. Minge & Co. at 7:42 a. m., September 14th. A reasonable time under normal conditions to send a message from Sherman to New Orleans and get a reply is thirty minutes. Had the message been delivered to C. H. Minge & Co. on the 13th they could have protected the offer up to 8 o'clock at night. The contention of appellant is, in effect, that the contract exempts it from liability for damages resulting from its failure to transmit the message with dispatch if such failure was occasioned by unavoidable interruption in the working of its lines, notwithstanding such interruption existed and its agents had knowledge thereof at the time of the receipt of the message, and the sender had no knowledge of such interruption. Upon the receipt of the message by the company it was its duty to transmit the same with reasonable dispatch

to its· destination and deliver the same to the addressee.  If after its receipt the wires and instrumentalities for the transmission of the message became interrupted by reason of an unprecedented storm so as to prevent their working, then, under the stipulation in the contract it would be excused for such delay as resulted from such interruption.  It is insisted that the stipulation is broad enough to include such interruptions as existed at the time of the receipt of the message.  We do not think the contract is capable of such a construction.  It speaks of delays arising, evidently meaning to arise in the future.  If, however, the contract were capable of the construction contended for by appellant, under the facts the stipulation contained in the contract could not be invoked in this case.  In many respects the duties and liabilities of a telegraph company are analogous to those of a common carrier.  They undertake to exercise a public employment, and in executing such employment they must use the same degree of care and skill which a prudent person would use under the same circumstances.  This applies to the receiving and transmission of all proper messages tendered to it for transmission.  If, as contended by appellant, its wires and instrumentalities over its routes to New Orleans were interrupted by an unprecedented storm, then it could have declined to receive the message on the ground that an act of God had prevented it from complying with its duty to receive and transmit the message.  It should at least have informed the plaintiff of the facts and afforded it an opportunity to make other arrangements if it so desired.  Having accepted the message with full knowledge of the condition of its wires and instrumentalities and assumed the duty of transmitting the same to the addressee, the company can not set up the stipulation in the contract to excuse its nonperformance of duty.  Railway v. Anderson, 21 S. W. Rep., 692; Express Co. v. Jackson, 21 S. W. Rep., 667; same case, 92 Tenn., 326.

It is insisted that N. B. Birge, secretary of plaintiff company, had notice of the condition of defendant's wires when the message was sent.  The evidence shows that he knew that the wires between Houston and New Orleans were prostrated and not working.  He did not know but that defendants had other lines open and over which the message could be sent.  He did not know of the interruption in appellant's lines between Shreveport and New Orleans.  He did not know of the congested condition of appellant's business at its Dallas relay office.

Again, it was sought to show that appellant had posted notices that its wires to southern points were down and that appellant was greatly behind in its business and that all messages would be delayed in transmission, said notices being posted up in its office near the counter where persons would have to come to send messages.  It was not proposed to show that plaintiff or any of its agents had actual notice of these facts or of the posting of such notice.  We are of the opinion, under the facts shown, that there was no error in excluding this testimony.

For the same reason there was no error in excluding the evidence

seeking to show the nature and extent of the storm that prostrated appellant's lines. Nor was there error in excluding the evidence as to the extent of the congestion of appellant's business at Dallas. Appellant knew of all these matters when it made the contract.

We have carefully considered all the assignments of error and conclude that no reversible error is shown in any of them. The judgment is affirmed.

*Affirmed.*