TEXAS & WESTERN TELEGRAPH AND TELEPHONE COMPANY
ET AL. v. C. W. MACKENZIE.

Decided May 25, 1904.

**1.—Building Contract—Bids—Delayed Message—Evidence—Probable Action of Sender or Sendee.**

A witness who contemplated the erection of a building, or his agent in procuring bids therefor, being the only persons who could pass upon and accept the bids, may testify that but for the telegraph company's delay in delivering the message of plaintiff, a building contractor, stating the amount of his bid, such bid would have been accepted and the contract awarded to him.

**2.—Same—Profits—Evidence.**

A contractor, whose bid for the proposed erection of a building was negligently delayed by a telegraph company until too late to be considered, may testify, in a suit for loss of the contract, what would have been his profits had he been awarded the contract.

**3.—Loss of Contract—Measure of Damages.**

The measure of damages for the loss of a building contract through negligent delay of a telegram stating the amount of plaintiff's bid is the difference between the amount of the bid and the actual amount it would have cost him to erect the building according to the plans and specifications.

Appeal from the District Court of El Paso. Tried below before Hon. A. M. Walthall.

*Patterson & Buckler,* for appellants.

*W. C. McGown, P. H. Clarke,* and *Edwards & Edwards,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This appeal is from a judgment of $1000 in favor of the appellee against appellants. The nature of the case will be indicated by our conclusions of fact, which are as follows:

The appellee, C. W. Mackenzie, was on the 25th day of December, 1902, and ever since has continued to be a building contractor, residing in the city of El Paso, Texas. On the day stated, G. H. French contemplated erecting a hotel building in the town of Douglas, Arizona Territory, according to certain plans and specifications, which had been drawn therefor. At that time and upon the dates hereinafter stated, appellant, the Texas & Western Telegraph Company, owned a telegraph line extending from, to and through the towns of Benson and Douglas, Arizona, which line was operated by appellant, the Postal Telegraph-Cable Company, which maintained offices and agents in said town for receiving, transmitting and delivering messages. The Western Union Telegraph Company and the Postal Telegraph-Cable Company maintained a joint office and agent at Benson for receiving and transmitting telegrams over the respective lines operated by them. Telegrams from the city of El Paso, Texas, to Douglas, Arizona, were received at the first named city and transmitted by the Western Union Telegraph Company over its line to Benson, Arizona, where they were received by the

Postal Telegraph-Cable Company and sent over the line of the Texas-Western Telegraph Company to their destination.

A. E. Williams, acting for and as agent of G. H. French, on the 27th day of December, 1902, furnished appellee with copies of the plans and specifications of the hotel French contemplated building in Douglas, Arizona, and solicited Mackenzie as a building contractor to make and forward to him at Douglas a bid for the erection and construction of said building according to said plans and specifications. It was arranged and understood between Williams and appellee that the latter's bid should be in by the afternoon of December 29th, when it as well as those of other contractors who might bid on the building would be opened and the contract awarded to him whose bid might then be accepted by Mr. French, the latter, however, reserving the right to reject any and all bids. After receiving the plans and specifications, the appellee as expeditiously as possible made an estimate of the cost of erecting the building, and upon the morning of the 29th of December, 1902, concluded that he could take the contract for $10,500, and to bid that amount. Whereupon at about 11:30 o'clock on the morning of December 29th he went to the office of the Western Union Telegraph Company in El Paso, Texas, and delivered to its agent for transmission over its line to Benson, and thence over appellants' lines to Douglas, the following telegram: "12-29-02.—Mr. A. E. Williams, Douglas, Arizona: Bid ten thousand five hundred, good hand brick. Can rush building. If satisfactory wire today; will come tomorrow. C. W. Mackenzie." Paying to said company 65 cents for sending the message, which covered the full charges for transmitting messages to and delivery at Douglas. At the time he informed the operator of the import of the telegram, that it was very important, and that it should be transmitted and delivered right away—that the bids were going to be opened, and that they were waiting on his bid. The message was at once transmitted by the Western Union Telegraph Company, and was received at Benson at 11:14 a. m. Pacific time, which was 12:14 El Paso or mountain time. When transmitted, the Western Union indicated and informed the agent of the Postal Telegraph-Cable Company at Benson of its importance, and that it was a "rush" message. A copy of the message was then given to the operator of appellants' telegraph line extending from Benson to Douglas, with notice of its importance for immediate transmission to the last named town. Instead of promptly transmitting the telegram, it lay in the office at Benson two hours and twenty-one minutes before it was sent over appellants' line to Douglas. An hour would have been a reasonable time for the transmission of the message from El Paso and its delivery at Douglas, but it did not reach Douglas until 2:55 p. m. Pacific or local time, and it was not delivered to Williams until 10 o'clock on the next morning. These facts, as well as other facts and circumstances, show that appellants negligently delayed the transmission and delivery of said message. The bids for the building were opened between 5 and 6 o'clock on the evening of December 29,

1902, appellee's bid not having been received, and all were rejected, and the contract alone for the brick work on the building was awarded to one O'Connor. Appellee's was the lowest bid. Had appellants transmitted said message stating his bid, it would have been received by Williams and delivered to French before the bids were opened, and would have been considered, accepted, and the contract for the erection of the entire building, according to the plans and specifications, awarded to appellee, who would, as is reasonably shown by the evidence, have made a net profit on said contract of $1000. By reason of the negligent delay of appellants in the delivery of said telegram, the contract was lost to him, with the consequent loss of said profit he would have made thereon. Wherefore appellee was damaged by said negligence of appellants in the sum of $1000.

*Conclusions of Law.*—Where a telegram, offered and accepted for transmission, expresses the object of the sender, or the purpose and importance of the message are made known, and by actionable negligence is unreasonably delayed in its transmission and delivery, the telegraph company, if there be no valid regulation affecting the measure of damages, is liable for such injury as is the direct, natural and necessary cause of defeating the object which would have been accomplished by the seasonable delivery of the message. Western U. Tel. Co. v. Hoffman, 80 Texas, 420, 15 S. W. Rep., 1048, 26 Am. St. Rep., 759; Western U. Tel. Co. v. Bowen, 84 Texas, 476; Sutherland on Dam., 3 ed., sec. 961; Griffin v. Clover, 16 N. Y., 489; Joyce on Elec. Law, sec. 952. When notice of the main purpose of the message is sufficient to put the telegraph company upon inquiry as to the attendant details, it is chargeable with notice of all it could have learned by such inquiries. Western U. Tel. Co. v. Edsall, 74 Texas, 329, 12 S. W. Rep., 41, 15 Am. St. Rep., 835; Western U. Tel. Co. v. Birge-Forbes Co., 29 Texas Civ. App., 526, 69 S. W. Rep., 181; Western U. Tel. Co. v. Nagle, 11 Texas Civ. App., 439; Joyce on Elec. Law, secs. 952, 953. The rule that in order to hold the company liable for special damages it must have notice of the importance of the message is not to be considered as meaning that all the details in reference to the transaction referred to in the dispatch, and which are known to the parties themselves, must be disclosed to the company. Where the message reasonably informs the operator, or he is informed by the sender, that it is of business importance and discloses the transaction so far as is necessary to accomplish the purpose for which it is sent, the company should be held liable for all the direct damages resulting from a negligent failure to transmit and deliver it within a reasonable time, unless such negligence is in some way excused. Joyce on Elec. Law, sec. 952, and authorities cited in note 28, pp. 911, 912. These principles are fully recognized by the trial court in its charge.

Bearing these principles in mind, we will now pass to the consideration of appellants' assignments of error.

The first complains of the court's refusing, at defendants' request, to peremptorily instruct a verdict in their favor; the second of its refusal to charge, at their instance, that the only damages the plaintiff could recover is the toll he paid for the telegram; the third, fourth, fifth, sixth and seventh, of the court's admission in evidence of and its failure to strike out the testimony of the witness G. H. French, to the effect that he would have accepted the bid of plaintiff and given him the contract to build the hotel at Douglas if he had been notified of Mackenzie's bid before the evening of December 29, 1902, and the eighth and ninth complain of the court's admitting in evidence and refusing to strike out the testimony of the witness A. E. Williams, to the effect that if appellee's bid had been received before the evening of December 29, 1902, he would have accepted the bid.

The insistence of appellants under these assignments is that had appellee's bid been received by French on the afternoon of December 29, 1902, and before the other bids were opened, it is altogther problematical and uncertain whether or not the contract would have been awarded to him. This insistence is based upon the proposition that the testimony of French and Williams to the effect that the contract would have been awarded appellee had his bid been received in time, is simply an expression of the witnesses' opinion, and was not relevant and competent to show that appellee's bid would have been accepted and the contract awarded him; that, therefore, there is no legal evidence to establish such fact, and consequently, without proof of it, no damages were shown to have accrued by reason of the delay in the delivery of the telegram.

The only means of proving whether appellee's bid would have been accepted or not was by the testimony of French and Williams, or the testimony of at least one of them. They alone could pass upon and accept the bids, and alone knew whether or not the bid of appellee was acceptable; if the proof could not be made by them it could not be made at all. The effect of holding that their testimony was not admissible upon this issue would be to say that in cases of this character the sender of a message of the greatest importance to him, the importance of which was known to the telegraph company, would have no redress whatever for the negligent failure of the company to perform its contract by transmitting and delivering it with reasonable-dispatch, however great the damages might be, occasioned by such negligence.

In State Insurance Co. v. Jamison, 44 N. W. Rep., 371, the court in discussing a question similar to the one raised here said: "The most numerous, and we may say notable, cases of this character grow out of the failure of the telegraph companies to deliver dispatches, and damages are asked because of the failure to deliver, and the loss to the plaintiff has resulted from a failure to sell in the market; and in such cases the question is directly involved, if the party would have sold. The case of Parks v. Telegraph Co., 13 Cal., 423, is directly in point; and upon this precise question the court said: 'To ascertain the damages

sustained by the breach of this contract these inquiries are pertinent. If the message had been sent, was the plaintiff's agent in Stockton at the time? And would he have received it? Next, would he have then taken out an attachment on the debt? At what time could he have done this? Could he have given security? Could he have procured attorneys to issue the writ? At what hour could and would it have been put in the hands of the sheriff? Was property there of the debtor's subject to the writ? If a telegraphic dispatch had reached the agent at 8 o'clock on the 7th, the agent would have been bound to act at once. It is to be presumed that he would have done so. At least he can testify whether he would.' Telegraph Co. v. Wenger, 55 Pa. St., 262, involves precisely the same principle. It was a question what the party would have done. Wenger purchased stock at an enhanced price, because of the failure to deliver a message, and the case presented the query what he would have done if the message had been delivered. The inquiry was held proper, and a recovery had. The books abound with cases where the principle or rule is recognized, though not questioned, which shows its relation to and importance in the business affairs of the country. In this connection see the following cases: Manville v. Telegraph Co., 37 Iowa, 214; Thompson v. Telegraph Co., 64 Wis., 531, 26 N. W. Rep., 789; Rittenhouse v. Telegraph Line, 44 N. W., 263; True v. Telegraph Co., 60 Me., 26. We think the fact sought to be established is a material one in the case, and reasonably susceptible of proof, and that in excluding the testimony for that purpose, and instructing the jury to return a verdict for the defendant, the district court erred." In that case the error of the trial court, for which the judgment was reversed, was in excluding just such testimony as appellants in this case complain of the trial court admitting.

In Willingsford v. Western U. Tel. Co., 38 S. E. Rep., 444, it was held by the Supreme Court of South Carolina, that where an issue as to what a person would have done had a telegram been delivered to him was raised by the pleadings, testimony tending to show what he would have done in such event was properly admitted in a suit against a telegraph company for negligently failing to deliver such telegram. In that suit plaintiff sought to recover for losses occasioned by prevention of a sale by the nondelivery of the telegram. In Hasbrouck v. Western U. Tel. Co., 77 N. W. Rep., 1037, Mr. Hasbrouck, a member of the plaintiff firm, was permitted to testify, as was also the other member, that if the telegram, as filed by Postern for transmission, had been received, they would not have sent the message they did send. The court held: "There was no error in permitting the answers; that it was a necessary fact to show under the issues, and it is difficult to imagine any other method of proving it. They were the only ones who knew the fact, and they did know it." See, also, Suth. on Damages, 3 ed., sec. 967, for cases where telegraph companies were held liable for the damages occasioned the senders of messages for loss of employment and profits of business, which, from the very nature of the cases, neces-

sarily required the plaintiffs to show what the sender or the sendee would have done or would not have done had it not been for the company's negligence in failing to properly transmit and deliver the messages. Those entertaining views different from the holding of the cases cited and referred to might read and consider with interest from section 960°to section 981 inclusive from Joyce on Electric Law, and the cases cited under those sections in support of the text.

It is conceded by appellants that evidence of what the sender or sendee of a telegram might or might not have done is admissible in that class of cases where mental anguish is an element of damages, and damages are sought to be recovered through the failure of the company to properly and expeditiously transmit and deliver the message. Cases belonging to that class where such evidence was admissible are too numerous in this State to require citation. Appellants contend that they are distinguishable from cases of the character of the one now under consideration. We must confess our inability to determine on any principle why such evidence is admissible in one class and not in the other. But the decisions in this State do not confine the admissibility of such testimony to the class of cases where mental anguish is an element of damages.

Western U. Tel. Co. v. Bowen, 84 Texas, 477, is a case where plaintiff's agent wired him, "Have 30,000 bushels for you, if you come at once." The answer which was negligently delayed, apprised the agent that the threshing machinery would be shipped at once. In consequence of the delay some of the parties who had arranged with the agent for the threshing of grain made contracts with others for their work, and the plaintiff lost a contract for threshing 30,000 bushels of grain. The company was held liable for the loss of these contracts, though there was no delay in getting the machinery to the place where the work was to have been done. This case necessarily required evidence of what plaintiff, as well as the parties with whom his agent made the contracts, would or would not have done had there been no delay in the delivery of the message, and such evidence must have been the testimony of the plaintiff and such parties themselves.

In the case of Western U. Tel. Co. v. Mitchell, 91 Texas, 454, which is one where damages for delay in delivering a telegram to plaintiff conveying the information of the failure of water supply upon his ranch, whereby he was prevented from making the necessary arrangements with others for obtaining such supply, it was held that the testimony of what plaintiff's agent and his wife would have done had it not been for the delay was admissible, the court saying: "What a party would do under a given state of facts which called upon him or her to perform a duty to some other person, is not a matter of opinion merely, but a fact which can be testified to by such person."

In the case of Western U. Tel. Co. v. Partlow, 30 Texas Civ. App., 599, 71 S. W. Rep., 584, the board of trustees of a public school, through their secretary, wrote Mr. Partlow informing him that the term of the

school extended over a period of seven or eight months, and could be lengthened by the principal into a subscription school of nine months, and that the principal was paid $70 per month, and that at a meeting of the board, held on the 3d of July, 1901 (the date of the letter), he was instructed to write and find out if he (Partlow) was still desirous of the position. The letter closed with a request that Partlow should notify the writer at once of his decision. Upon his receipt of the letter he immediately delivered for transmission this telegram: "Yours delayed, can accept, particulars by mail to-day." The telegram as transmitted and delivered by the company read as follows: "Yours delayed, can't accept, particulars by to-day's mail." The telegram being deliv-livered in its changed form, the board of school trustees took it as a declination of Partlow to accept the position, and before receiving his acceptance by mail tendered the position to another teacher, who accepted it. Partlow in a suit against the telegraph company for damages for loss of the position as teacher in the school by reason of such negligence, proved by the members of the board of trustees that had they received the telegram as written out by him and delivered to the company for transmission, he would have been employed by the board as teacher of the school, and it was held on appeal that such testimony was properly admitted.

It was thus shown that upon principle and by the weight of authority, in other States as well as in Texas, that the testimony of French and Williams, made the subject of the assignments under consideration, was relevant and admissible upon the issue of damages.

The plans and specifications for the building having been submitted by French's agent to appellee, with the request that he make a bid for its erection and ·construction, the acceptance of the bid made by appellee would have constituted a contract between the parties, the terms of which and the rights thereunder would have been definite, fixed and certain. None of the cases cited by appellants in support of their contention under these assignments is such as would show that a complete contract would have been made had it not been for the defendants' negligence, even though testimony as to what the sender or sendee of the telegram would or would not have done had it not been for such negligence. This distinguishes such cases from the one under consideration.

In Joske v. Pleasants, 15 Texas Civ. App., 433, it was held that a contractor or builder might state what would have been the actual cost of the construction of a building according to certain plans and specifications, without stating the cost of each item of work and material entering into construction; and if such testimony were deemed too general, the costs of each item might be inquired into on his cross-examination. In the case at hand the evidence shows that the actual cost of labor and material necessary and requisite to complete the building according to the plans and specifications, including $200 for incidental expenses, would have been $8478.74, and that the difference between

that sum and appellee's bid would have been his profits.    Therefore the court did not err in admitting the testimony of appellee as to what would have been his profits on the contract for building the hotel, had it been awarded him on his bid.

The appellee having lost the contract by reason of appellants' negligence, the measure of damages was the difference between the amount of his bid and the actual amount it would have cost him to erect the building according to the plans and specifications.    The evidence is reasonably sufficient to show that this difference would have been $1000. In McLane v. Maurer, 28 Texas Civ. App., 75, 66 S. W. Rep., 693, the court said:  "The difficulty in the determination of the question thus presented lies not so much in the ascertainment of the law of the subject as in its application to the facts of the particular case.  The broad general rule in such cases is that the plaintiff may recover such damages, including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of making the contract as the proximate and natural consequences of a breach by defendant; and in determining what may reasonably be supposed to have been within the contemplation of the parties as a natural consequence of a breach, all the facts surrounding the execution of the contract known to both parties may be considered, even if these be such as would not necessarily enter into it if known to the defendant.  The only question that could arise in the matter of the benefits that would have accrued had the contract not been breached would be as to the proof.  If appellees could make it appear reasonably certain that they would have sold the whole of the land but for the interference of appellant, they would be entitled to the interest in what they could show the land would have sold for."    Under this case and authorities cited therein we must hold that the damages recovered are not too remote, but were proximately caused by appellant's negligence.

The court's charge correctly presents all the law applicable to the case, and there was no error in the court's refusing to give any of the special charges requested by appellants.

In our opinion there is no error which requires this court to reverse the judgment appealed from.    It is therefore affirmed.

*Affirmed.*

Writ of error refused.