WESTERN UNION TELEGRAPH CO. v.
DOROUGH. (No. 456.)

(Court of Civil Appeals of Texas. Beaumont.
April 15, 1919. Rehearing Denied
June 4, 1919.)

1. TELEGRAPHS AND TELEPHONES ⊕═65(1) —
FAILURE TO DELIVER MESSAGE PROMPTLY—
ACTION FOR DAMAGES—PLEADING.

In action for failure to promptly deliver
telegram informing plaintiff that sender would
sell his interest in a partnership, failure to de-
liver promptly resulting in the other partner
withdrawing his consent, so that plaintiff could
not purchase, complaint *held* to state a cause of
action.

2. TELEGRAPHS AND TELEPHONES ⊕═67(2) —
PROMPT DELIVERY OF MESSAGE—NOTICE OF
DAMAGES.

Telegram, "If still in notion of selling me
interest in business, let me hear from you at
once," and answer, "Will sell my interest, meet
me in Longview to-morrow, second," gave de-
fendant company notice that a business trans-
action was pending between the parties, and
that a failure to promptly transmit would prob-
ably result in loss to one or the other.

3. TELEGRAPHS AND TELEPHONES ⊕═66(4)—
FAILURE TO DELIVER MESSAGE—DAMAGES—
PROXIMATE CAUSE.

In action for failure to deliver a telegram
informing plaintiff that seller would sell his
interest in a partnership, evidence *held* to show
that plaintiff sustained damages as the proxi-
mate result of defendant's negligence.

4. TELEGRAPHS AND TELEPHONES ⊕═66(4)—
FAILURE TO DELIVER MESSAGE—DAMAGES—
EVIDENCE.

In action for failure to promptly deliver a
telegram informing plaintiff that sender would
sell his interest in a partnership, failure to
deliver resulting in sale not being consummat-
ed, *held*, there was competent evidence to sus-
tain judgment for damages, based upon the dif-
ference between the agreed price and the market
value of the business.

5. EVIDENCE ⊕═323(1), 471(20) — HEARSAY —
OPINION EVIDENCE.

In action for failure to promptly deliver a
telegram informing plaintiff that sender would
sell his interest in a partnership, failure to de-
liver resulting in sale not being consummated,
testimony as to reasonable value of business by
witnesses who stated that they knew the fair
and reasonable market value of the business was
not subject to objection that it was incompetent,
irrelevant, immaterial, hearsay, and mere opin-
ion.

Appeal from District Court, Harris Coun-
ty; J. D. Harvey, Judge.

Action by Clyde Dorough against the West-
ern Union Telegraph Company. Judgment
for plaintiff, and defendant appeals. Af-
firmed.

Hume & Hume, of Houston, for appellant.
Gill, Jones, Tyler & Potter, of Houston, for
appellee.

WALKER, J. Appellee, plaintiff below,
sued appellant, defendant below, for damages
alleged to have resulted from defendant's
failure to deliver promptly to plaintiff, at
Houston, Tex., the following telegram:

"Marshall, Texas, Sept. 1, 1916.
"Clyde Dorough, Houston, Texas: Will sell
my interest. Meet me in Longview to-morrow
second.    Claude Dorough."

On August 30, 1916, plaintiff had sent from
Houston the following telegram to his broth-
er, Claude Dorough, at Marshall, Tex.:

"Sold cottage. Have to vacate at once. If
still in notion selling me interest in business
let me hear from you at once. Care Model
Laundry."

In answer to this last telegram plaintiff's
brother, Claude Dorough, on September 1,
1916, filed with defendant at Marshall, Tex.,
the telegram above copied. This message of
September 1, 1916, was not promptly deliv-
ered. Claude Dorough, the brother of plain-
tiff, on September 1, 1916, owned a one half
interest in a pool hall business located at
Longview, Tex. The other half interest in
said business was owned at said time by one
S. L. Terry; the business then being con-
ducted as a partnership by said Claude Dor-
ough and said S. L. Terry. Claude Dorough
had, prior to August 30, 1916, the date of the
telegram as above copied, offered to sell to
plaintiff a one-half interest in the said busi-
ness; for the sum of $725, $600 in cash and the
assumption by Clyde Dorough of one-half of
a note amounting to about $250, and plain-
tiff's purpose in sending the message of Au-
gust 30, 1916, was to ascertain if Claude Dor-
ough was still willing to sell to plaintiff, and
to indicate plaintiff's desire to purchase said
one-half interest. Prior to August 30th
Claude Dorough had represented to his broth-
er, the plaintiff below, that in buying a one-
half interest in the business he would get a
one-half interest in the physical properties
in the good name and good will, and that the
partnership would continue as it had been
running for several months, and that it was
satisfactory with S. L. Terry to substitute
the plaintiff in the partnership for the said
Claude Dorough. In sending the message
dated September 1st it was the purpose of
Claude Dorough to indicate to plaintiff his
willingness to sell his interest in the pool hall
to plaintiff, and to convey to plaintiff for the
consideration of $725 a one-half interest in
the physical properties and in the established
business. This message dated September 1st
was not delivered to plaintiff nor its contents
communicated to him until two or three days
after September 2, 1916—that is, on Satur-
day following. Failing to hear from Claude
Dorough in answer to his telegram of August
30th, plaintiff, on Saturday, communicated
over the long-distance phone with Claude

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Dorough at Marshall, and learned from him that the message had been sent on September 1st, and that he had gone to Longview on the 2d to meet plaintiff and to close and consummate the sale of the business, and, further, on this Saturday Claude Dorough told plaintiff that he was still willing to sell to him, but he would have to see Terry again before doing so. Claude Dorough did see Terry, and Terry had changed his mind about taking plaintiff in the partnership, and refused to agree to the sale. Thereupon planitiff declined to purchase a half interest in the physical properties, because he did not want the property unless he could at the same time become a partner in the business.

Plaintiff pleaded the facts substantially as stated above, placing the market value of a one-half interest in the business at Longview at $1,500, alleging that he could and would have bought the same for $725 if the telegram had been promptly delivered, and that he would have become a partner in the business and would have acquired a half interest in all the properties, good will, and good name. He placed his damages at $775.

The case was tried by the court without a jury, the court rendering judgment for $775, with interest at the rate of 6 per cent. per annum from September 2, 1916, to date of judgment, December 13, 1917.

[1] Appellant's first assignment of error is that plaintiff's first amended original petition states no cause of action. Under this assignment appellant advances this proposition:

"The petition disclosing on its face that plaintiff failed or refused to consummate the purchase merely because one S. L. Terry, a stranger to the contract of transmission, and without legal relation to the transaction of sale between plaintiff and Claude Dorough, changed his mind and refused to consent to Claude Dorough's sale of his own interest, and said consent of said stranger (Terry) being wholly irrelevant and without legal effect upon the right of said Claude Dorough to sell and without legal effect upon the right of plaintiff to buy (the established rule of law being that a sale by a partner of his interest dissolves the subsisting partnership ipso facto, and that a partner has the right to sell to a third person without the consent of a copartner), no actionable negligence is shown, and no cause of action is stated."

Plaintiff's petition alleged the facts substantially as we have given them above. Appellant's proposition that a sale by a partner of his interest dissolved the existing partnership ipso facto, and that a partner has a right to sell to a third person without the consent of his copartner, is correct, but in this case a part of the contract was that plaintiff was to take the place of his brother in the established partnership, and was to acquire not only a one half interest in the properties, but also in the business, the good will, and good name, and plaintiff further alleged that S. L. Terry, the owner of the other half interest, had agreed to this proposed sale on these conditions.

While, as asserted by appellant in its second proposition under this assignment, the plaintiff did not lose an opportunity to buy a half interest in the physical properties of the partnership, yet on the allegation in plaintiff's petition he did lose an opportunity to buy a half interest in an established and successful business, and this, as well as an interest in the properties, was what plaintiff was buying from his brother.

There being no special exception to plaintiff's petition, it is good against appellant's third proposition under this assignment, to the effect that plaintiff did not allege that the consent of Terry was necessary or vital to the consummation of the trade between plaintiff and his brother. Plaintiff did allege that Terry had consented to it, and, the trade not being consummated on September 2d, Terry had changed his mind, and thereby plaintiff lost his opportunity to buy into the business.

Appellant's fourth proposition under this first assignment is as follows:

"The petition states no cause of action, in that it affirmatively appears thereupon that the damages alleged were too remote, uncertain, contingent, conjectural, speculative, and not within contemplation of the parties to the contract of transmission."

[2] We cannot agree to this construction of these telegrams. On their face they are sufficient to give notice to appellant that a business transaction was pending between Claude and Clyde Dorough, and that a failure to promptly transmit and deliver the same might probably result in pecuniary loss to the one or the other of these senders. Telegraph Co. v. Turner, 94 Tex. 304, 60 S. W. 432; Telegraph Co. v. Stiles, 89 Tex. 312, 34 S. W. 438; Telegraph Co. v. Edmondson, 91 Tex. 206, 42 S. W. 549; Telegraph Co. v. Sunset Construction Co., 109 S. W. 265; Telegraph Co. v. Mackenzie, 36 Tex. Civ. App. 178, 81 S. W. 581; Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Telegraph Co. v. Houston Rice Milling Co., 93 S. W. 1084; Telegraph Co. v. Williams, 137 S. W. 148; Telegraph Co. v. Smith, 124 S. W. 733; Telegraph Co. v. Robertson, 59 Tex. Civ. App. 426, 126 S. W. 629; Telegraph Co. v. Sheffield, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790; Telegraph Co. v. Carver, 31 S. W. 432; Telegraph Co. v. Edsall, 74 Tex. 329, 12 S. W. 41, 15 Am. St. Rep. 835; Telegraph Co. v. Haman, 2 Tex. Civ. App. 100, 20 S. W. 1133.

Appellant's fifth proposition under this first assignment is that the petition disclosing on its face that plaintiff's failure to purchase Claude Dorough's one-half interest in the business of said Claude Dorough and S. L. Terry was due to plaintiff's own unwilling-

ness to purchase said half interest where he could have done so after September 2, 1916, had he chosen to do so; therefore the petition states no cause of action. This proposition cannot be sustained.

Appellant's third assignment of error is that there was no evidence of notice to defendant of the damages alleged.

What we have said above disposes of this assignment. In addition to the above authorities, see, also, Telegraph Co. v. Bowen, 84 Tex. 476, 19 S. W. 554; Telegraph Co. v. Sheffield, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790; Telegraph Co. v. Mackenzie, 36 Tex. Civ. App. 178, 81 S. W. 581; Telegraph Co. v. Stiles, 89 Tex. 312, 34 S. W. 438; Telegraph Co. v. Edmondson, 91 Tex. 206, 42 S. W. 549; Telegraph Co. v. Turner, 94 Tex. 304, 60 S. W. 432; Telegraph Co. v. Haman, 2 Tex. Civ. App. 100, 20 S. W. 1133.

[3] Appellant's fourth assignment of error is that there was no evidence to show that plaintiff sustained damages as the proximate result of defendant's negligence. Under this assignment, we give a detailed statement of the testimony, as follows:

Claude Dorough, sender of the message sued on, testified in part as follows:

"I did own an interest on September 2, 1916, and prior and subsequent thereto, in the business known as the Brunswick Billiard Parlor at Longview, Tex. The Brunswick Billiard Parlor was a partnership between S. L. Terry and me, and was not a corporation. I did negotiate with my brother, Clyde Dorough [plaintiff], prior to September 1, 1916, with reference to selling him my interest in said business. It was in the latter part of August when I first took the matter up with him. * * * I offered to let him have it if he would pay me $600, which I had paid in cash, and would assume one-half of the outstanding notes against the business, which was the indebtedness against my part of the business, thus offering to let him have it at what I actually paid for it. There was no correspondence that I can now think of until after the 2d of September, 1916. My brother also told me in his conversation (the latter part of August) that he was trying to sell his home place, and, if he succeeded in doing so, he would purchase the business.

"I did receive from him a telegram dated Houston, Tex., August 30, 1916. If Clyde Dorough had been in Longview on September 2, 1916, I was able, ready, and willing at that time to arrange the details of the sale and to convey to him my interest in the Brunswick Billiard Parlor, of Longview, Tex., and I was in Longview myself on the 2d of September, 1916, expecting him to be there for the purpose of closing the deal.

"The things that prevented the sale from being completed after September 2, 1916, was that my partner, S. L. Terry, changed his mind and refused to consent to the sale of my interest to my brother.

"After sending the telegram to my brother telling him to meet me in Longview on September 2d, which he stated he had not received, and asking me if I was still willing to make the trade, I told him that I was if it was agreeable with Mr. Terry. I then took the matter up with Mr. Terry, my partner, and he refused to consent to the proposed sale. I cannot give the exact date that he changed his mind about this, but it was a few days after September 2, 1916.

"It is possible that I could have sold without the consent of my partner, Mr. Terry, but I should not think that Clyde Dorough or any one else would desire to purchase an interest in a property against the will and wishes of the owner of the other half, as it was certain to be unpleasant and in all probability unprofitable.

"As stated above, I was not in a position where I could give the business my attention, and therefore desired to dispose of it, and in addition to this I was trying to sell to my own brother, and these reasons induced me to offer to sell it for less than I consider the property actually worth.

"I did sell my interest in the business at a later date, to wit, on or about December 1, 1916, for $600 in cash, the purchaser assuming all outstanding notes and indebtedness.

"I had been a partner with S. L. Terry since the 27th day of May, 1916."

S. L. Terry testified in part as follows:

"On or about the 1st of September, 1916, I was the owner of one half undivided interest in said Brunswick Billiard Parlor. In December, 1916, I purchased the other half interest.

"On or about the 2d day of September, 1916, and prior thereto, I talked with Claude Dorough, my partner in the business, about selling his interest to his brother. It was mentioned on two or three occasions, and the conversation on each was in substance as follows: Claude told me he thought he could sell his one-half interest to his brother and asked if it would be satisfactory with me for him to do so. I told him it would be all right. I knew nothing of the arrangements between Claude and Clyde Dorough to meet in Longview on the 2d of September, 1916, to arrange the sale of said interest; at least if I knew anything about it at that time, I now have no recollection of it. However, if they had met at that time and had wanted to make such trade, I would have had no objection thereto.

"It was some time after September 2, 1916, that I made up my mind to buy Claude's interest in the business if I could, and the next time he mentioned it to me I told him that I would not agree for him to sell his interest to any other person.

"I do not know the exact date on which I first declined to agree to Claude selling his interest, but I do remember that it was the first time he mentioned it to me after the 1st day of September, 1916. Prior to September 2, 1916, I had not thought much about Claude selling the business, but later on I began to think it over and decided to try to buy his interest.

"I have been in the poolroom business since the 27th day of May, 1916, to the present time.

"If Dorough had sold his interest in this property over my protest, I would not have operated this business in partnership with the person to whom he might have sold, but would have sued for partition."

Clyde Dorough, plaintiff, testified in part as follows:

"I had an understanding with my brother with reference to the purchase of said one-half interest in the pool hall. The understanding I had with him was that if I disposed of my home that he was to sell me a half interest in the pool hall for $600 cash and me to assume the outstanding notes against it.

"That conversation between he and I took place some time in August, 1916, at my residence in Houston Heights, Tex. * * * At that time my brother asked me how I was getting along, if I would like to better myself if I could, and I told him certainly, and he made the proposition and said he wouldn't do it for anybody else, and another thing he didn't have time to give it the proper attention, because he had this business in Marshall. He was living in Marshall at that time and had the pool hall in Longview. The terms he made me for his interest in the pool hall were satisfactory.

"That is the telegram I sent, the one I wrote out. I told my brother in there that I had sold my cottage and would have to vacate at once, and asked him, if he was still in the notion to sell, to let me hear from him at once. The terms were the ones we had made when he was visiting here, and it wasn't necessary to mention that in the telegram. The idea was to find out if he was still in the notion to sell.

"If I had gotten to Longview and found my brother there, and his partner was willing for the business to be sold upon the terms that had theretofore been agreed upon, I would have completed the transaction.

"The first time that I found out that the message had been sent to me notifying me that he would sell, I think I waited for about two or three days to hear from him, and it was on Saturday afternoon I telephoned him about it. I asked him why it was he hadn't answered my telegram, and he told me that he had and had been in Longview the following day and waited for me, and I didn't show up; I told him I hadn't received it. At that time I was still willing to buy the business, and I told him I was willing. He said he was still willing to sell it, and I asked him to take it up with Terry, his partner, and he said he would. The next thing I heard from him it was a week or so afterwards I got a letter from him, and he said he had been to see Terry, and Terry had changed his mind and wasn't willing for him to sell; then I gave the matter up."

The foregoing facts fully sustained the judgment of the court as against this assignment.

[4] The seventh assignment of error is that there was no competent evidence to sustain the judgment for damages, based upon the difference between the agreed price and the market value of the property.

[5] The eighth and ninth assignments of error are that the court erred in admitting testimony of S. L. Terry and Claude Dorough as to the market value of the property.

They each testified that they knew the fair and reasonable market value of this business, and knew the market value of Claude Dorough's share of same on or about the 2d day of September, 1916; that, taking into con-

sideration all of the property, the trade and name, $3,000 was a fair and reasonable market value of the entire business on the 2d day of September, 1916, and $1,500 for one-half interest in the business. This testimony was objected to by appellant on the ground that it was incompetent, irrelevant, immaterial, hearsay, and mere opinion. This testimony was admissible as against this objection. With this testimony before the court, the evidence as to the market value is fully sustained.

Finding no error in this record, the case is in all things affirmed.