## Western Union Telegraph Company v. J. T. Turner.

### No. 964.  Decided January 21, 1901.

1. **Telegraph—Message—Connecting Lines—Route Designated by Sender.**

A telegraph company accepting for transmission a message for a point off its line by delivering it to a telephone connection designated by the sender, was bound to transmit by the telephone route so named, and is liable to the sender for damages from delay in the delivery occasioned by its attempt to forward by a different telephone connection, the line of which proved to be out of order. The sender had a right to designate the route. (P. 307-309.)

2. **Damages—Business Transaction—Notice to Company.**

The message "accept offer five three quarters" being sufficient to suggest that it was an acceptance of an offer involving a business transaction, no further notice of the fact that its delivery was necessary to close a contract for purchase of cotton was necessary in order to make the company liable for damages to the sender by loss of the profits of such contract which he was prevented from concluding by default in the delivery of the message. (Pp. 308, 309, 310.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Fifth District, in an appeal from Marion County.

*M. R. Geer,* for appellant.—Did Turner have a right to direct the message to be sent by way of Naples, and was it negligence for the company to undertake to send it by way of Atlanta? A telegraph company is not a common carrier; their duties are different, and are performed in different ways; and they are not subject to the same liabilities. Primrose v. Telegraph Co., 154 U. S., 14. Yet it can not contract against or limit its liability for its own negligence. But by contract, or by its rules and regulations brought to the knowledge of its employer, it may limit the measure of its responsibility to a reasonable extent. 154 U. S., 15. Appellant certainly is not bound by a higher rule than that governing, if it was or is a common carrier.

The rule of the telegraph company, of which Turner had notice, required the message to be sent via "the nearest line," which here was Atlanta. Atlanta 'phone line was the next other wire line en route. This rule of the telegraph company was only the common law; it is surely the statutory or decision rule in Texas as to railways. The common law, or

statute or decision of Texas, requires no more than to deliver to the next connecting carrier or other wire line en route. beyond.

Turner knew his message had to be 'phoned to Linden, in which 'phone lines the telegraph company had no interest, and that the telephone company should act as his agent "without liability to forward over connecting lines." Now, if the telegraph company without liability was Turner's agent to forward over other lines, what line, in the absence of expressed contract, was required to be used? The next line en route beyond, because such was the law. And if ordinary care was used in delivering the message to such connecting line, this appellant by actual contract was not liable for such other line's neglect. Ordinary care applies to the delivery to the connecting line and not to the actual working of such line, for if the latter be held the rule, then the first carrier or initial line would be responsible for the other company's acts, an insurer, even against the actual contract terminating its liability at the end of its line.

But it is insisted that as Turner told appellant that the Atlanta 'phone line was down, the duty to send by Naples was absolute. The notice that the Atlanta 'phone line was not working did not ipso facto require appellant to violate the law or its rules as to delivery to next other wire line; it only added the imposed duty in delivery, to exercise the quasi second act of ordinary care as to whether or not the 'phone line was working. Clearly, before the message ever left Jefferson the second or imposed act of ordinary care was exercised. Appellant asked if the 'phone line was working, and an affirmative response was made by the 'phone agent. What more can or will the law impose on any carrier or electric wire company? Can the telegraph agents force an entrance into or take charge of a 'phone office and by actual acts see if the line is working or test whether 'phone agent is lying or not? Surely no court will require us to do more than inquire and act on the information had of the 'phone operators, not upon Turner's statement.

Beyond all this, however, we insist Turner did not route his message via Naples. Turner wrote his own message, or if the operator wrote it, under Edsall's case, 63 Texas, 668, he was Turner's agent. It did not read "via Naples," or "in care of Naples or Naples 'Phone Co.," but in the words of the statement, Turner "asked" or "directed" message sent by Naples. These acts on Turner's part do not rise to the dignity of a contract or agreement or routing of the message. Turner may have had the privilege and right to route his message, but if Turner failed in express terms to route it, then the law, or appellant's rules, fixed this right in the telegraph company. The right of the telegraph company to route is complete, as the contract in express terms is silent upon that point. Wells Fargo v. Fuller, 4 Texas Civ. App., 213. Turner's "asking" or "directing" not shown to have been agreed to by the telegraph company, surely is not the express terms required. It is not a contract to so route or send agreed to by the company. In Myrick v. Railway, 107 United States, 107, "In the absence of a special agreement liability will not

attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence." Also Railway v. Jones, 155 U. S., 339.

In Fuller's case, 4 Texas Civil Appeals, 217, Fuller pointed out on the map the route he desired his brother's body to go; that he wanted to accompany the remains and would buy his ticket over the pointed out map route. The pointed out route was agreed to by the express company's agent, but the receipt did not show this route. The Dallas court held it error to admit Fuller's evidence as to what he did or directed as to routing if contrary to or not shown by or in the receipt or way bill, and that there was no express routing of the body.

We submit that the law on the first question is, that Turner had the privilege or right to route his message, but the facts show in this case that he did not exercise his privilege and right in express terms. Therefore the telegraph company had the right to route the message, which is shown to have been done as required by law. Therefore the telegraph company was not negligent, nor is it liable for the delay occurring on the 'phone line.

Second Question: Contracts can be made by telegraph, and like one by letter or mail, are completed when the acceptance is filed or deposited with the telegraph company for transmission. Trevor v. Wood, 36 N. Y., 307; Perry v. Iron Co., 15 R. I., 380; Oil Co. v. Lead Co., 4 Dill., 431; Haas v. Myers, 111 Ill., 421. That such is now the law, all courts which have spoken hold. Parties can contract by wire, and an offer and acceptance completes the trade when the message is filed or deposited with the company, though never delivered. The rule as to letters and telegrams is the same. 93 Am. Dec., 511; 36 N. Y., 307; 67 Texas, 160; Blake v. Insurance Co., 94 U. S., 29. There can be no question as to the general rule that a letter accepting an offer concludes the trade when mailed, though never delivered. We insist this rule under all decisions applies to telegrams.

Therefore, without any explanation or extrinsic notice to the telegraph company taking Turner's message out of the general rule, it concluded the trade. The cotton belonged to Turner, its price or value to Nelson. This, of course, is predicated upon the application of the general rule of law to the face of the message. Turner seeks to take his case out of the general rule by saying the trade was not completed until Nelson had the acceptance message. Turner's contention is not the general rule; it is a special case.

Now, as to Turner, could the telegraph company reasonably contemplate any damage based upon the nondelivery to Nelson, when the company did not know, nor had it any notice, that its receipt by Nelson alone completed the trade. These facts, the special circumstances, the actual receipt by Nelson of the message, take the trade at least as to Turner out of the general rule of law, make the trade depend upon facts not in the usual course of trades, and put the telegraph company to the hazard of facts not communicated to it, and not fairly and

reasonably arising according to the natural or general rule of law in such cases.

Clearly, if the acceptance concluded the trade when the message was filed, then Turner's special facts take this case out of such rule. Can such special facts bind the telegraph company without being brought to its notice or knowledge? The telegraph company had the right to rely on the general rule of law applicable to the message, and that the trade was complete when Turner filed his message. If the telegraph company breached any contract it was not done upon or with notice that delivery to Nelson alone completed the trade. Therefore the telegraph company, at least as to Turner, is clearly subjected to damages upon facts not fairly arising from the contract or the law or the face of the message, and not otherwise communicated to it. Telegraph Co. v. Coffin, 88 Texas, 96, 97; 30 S. W. Rep., 896.

It surely takes facts not communicated to the telegraph company to support the recovery. If necessary to the recovery it is quite essential for the telegraph company to have notice so as to act with due regard to such facts. If the right of the recovery depends upon the fact that Nelson must have the message before the trade was consummated, then the telegraph company must, or at least should, be notified of all facts, or enough to put it upon inquiry of the actual facts, before it would be liable for anything except that within its contemplation as arising under the general rule of law. Edwards v. Kearzey, 96 United States, 601, holds: "That the laws which subsist at the time and place of making the contract enter into and form a part of it, as if they were expressly referred to, or incorporated in its terms."

Hence the law arising from and on the face of Turner's message was, that the contract was complete and the trade consummated, although Nelson never had the message; on the face of the message the minds of Turner and Nelson had met and agreed. To avoid the force of this rule, Turner especially agrees as to Nelson's actual receipt of the message. This fact Turner did not communicate to the telegraph company, yet on these facts the liability is established, and of which we complain, as contrary to the rules so forcibly and clearly laid down in the Coffin case, 88 Texas, 96, 97.

*R. R. Taylor,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fifth District submits the following statement and questions:

"The appellee, J. T. Turner, was a cotton buyer doing business at Jefferson, Texas. On February 7, 1899, he was at Linden, Texas, and while there Nelson and Rogers, who owned seventy bales of cotton located in a warehouse at Jefferson, offered to sell him their cotton at $5.75 per hundred pounds. Turner was to return to Jefferson that day, and agreed with them that when he got there and saw the market quotations he would, if the market justified him in doing so, take the cot-

ton at the price named. He was to reply by telegram and the trade was not to be considered closed until a message accepting said proposition was received by Nelson. When Turner reached Jefferson, he concluded to take the cotton and went to the office of appellant and delivered ·to appellant's agent a message directed to Nelson, at Linden, accepting the proposition, which message reads as follows: 'To C. H. Nelson, Linden, Texas: Accept offer five three quarters. Send tickets. Accept Rogers. (Signed) J. T. Turner.' Appellant did not operate a line to Linden, but did own and operate a line to Atlanta and Naples and there were telephone lines from both those points to Linden. The appellant had no interest in or connection with the telephone lines, and when messages were delivered to it directed to points on those lines, it accepted same and delivered such messages to the telephone company to be transmitted by it to their ultimate destination and there delivered to the addressees. The line from Atlanta to Linden was not in good working order, but the line from Naples to Linden was in good condition. Turner notified the agent of the appellant of said facts and asked that the message be sent by Naples. The rules of the company required the agent to send such messages by the nearest line that was open, which, in this instance, was by Atlanta, if that line was in working order. The agent at Jefferson inquired of the agent at Atlanta whether the 'phone line to Linden was all right. The Atlanta agent sent the inquiry to the 'phone agent and received a response in the affirmative. Thereupon the Jefferson agent routed the message by way of Atlanta and promptly transmitted it to that place and the agent there promptly delivered it to the 'phone agent, who undertook to forward it to Linden, but could not do so on account of the condition of the wire. The 'phone agent kept the message for two days and then returned it to the telegraph company, whose agents at once notified Turner of its nondelivery. Before Turner could communicate with Nelson, the latter had sold his cotton and Turner lost the profits on his trade, amounting to $87.50, the cotton being worth that sum more than the amount he agreed to pay for it. Had the message been sent by Naples, as directed by Turner, it would have been received by Nelson on the day it was sent and the trade would have been consummated. By the custom then prevailing in the cotton business, an offer to sell at a stated price was good only for the day on which the offer was made. Turner paid the agent at Jefferson the charges both of the telegraph company and the telephone company, but did not notify the agent of the telegraph company that the delivery of ·the message to Nelson was necessary to close the contract. There was indorsed on the message an agreement by the sender making the company the agent of the sender, without liability, to forward the message over connecting lines.

"This suit was brought by Turner against the telegraph company to recover the damages sustained by him on account of the nondelivery of said message, which damages were alleged to be the loss of the profit he

would have made on his trade with Nelson for the purchase of the cotton.

"Question 1. Did Turner have a right to direct the message to be sent by way of Naples, and was it negligence for the company to undertake to send it by way of Atlanta?

"Question 2. Was it necessary, before Turner could recover the damages claimed by him, for the company to have notice of the fact that the delivery of the message to Nelson was necessary to close the contract for the sale of the cotton? In other words, can it be held, in the absence of notice to the company of said fact, that the company had in contemplation when it received and undertook to transmit the message, that the damages sued for would result from a failure to deliver the message to Nelson, or did the company have the right to suppose that the filing of the telegram of acceptance closed the trade and that no damage would result from the failure to deliver? See Telegraph Co. v. Davis, 35 S. W. Rep., 189."

1. Under the facts stated, Turner, the sender of the message, had the right to direct that it be sent by way of Naples; and the attempt to send it by Atlanta was not a discharge of the duty which the company owed him. The company was engaged in the operation of a line and the transmission of messages to Naples, and was charged by law with the duty of sending messages to that point for all persons, upon payment of the proper charges. This obligation gave to Turner the right to demand that his message be sent to that point and delivered to the agents of the company operating the telephone line from there to Linden. The defendant also held itself out as willing to undertake the duty, in addition to that just defined, of forwarding messages over connecting lines, acting as the agent of the sender. In employing it to perform the latter service, the sender undoubtedly had the right to instruct it, as any other agent, to send the message over a particular connecting line with which it was doing business.

The rule of the company directing its agents to send messages by the nearest open connecting line could not apply in this case, even if in any event it could operate so as to defeat the right of the sender just stated, for the reason that the nearest line was not open on this occasion.

We understand the latter part of the question, in reference to negligence, to put the question whether or not the attempt to send the message by Atlanta was negligence in that it was a violation of the right of the sender before mentioned to direct it to be sent by Naples, and, thus construed, it is answered by what we have said. If it should be otherwise treated, it would present a question of fact which this court can not answer.

2. The second question is answered in the negative. The language of the message was sufficient to suggest that it was intended as the acceptance of an offer involving a business transaction and to make it the duty of the company, if it desired further information, to request it. Telegraph Co. v. Adams, 75 Texas, 535. The most that can be said in

favor of defendant on this proposition is that it appeared to its agent that the filing of the message, without delivery of it to the addressee, might or might not have the effect of completing a contract, its effect in this regard depending on other facts not disclosed. The obvious purpose of the message was to communicate to those to whom it was addressed notice of the acceptance of an offer, and the party whose rights depended upon the delivery of such notice was entitled to have it properly sent and delivered; and it was wholly immaterial to the company which party that was. Or, if its action could in any way properly have depended on its knowledge of this fact, it was its duty to seek further information.