WESTERN UNION TELEGRAPH COMPANY v. W. L. MCDONALD.

Decided March 5, 1906.

**1.—Telegraph Message—Routing.**

The court charged the jury as follows: "Parties sending messages have the right to designate the route by which his message shall be sent, and the telegraph company is compelled to carry out the instruction of the party sending such message." The objection is to the word *compelled*. Where a message is destined beyond the lines of the receiving company the sender has the absolute right to select the connecting route. In the use of the route selected the company is held only to ordinary care. The charge complained of, construed in the light of its context, imposed no higher duty.

**2.—Telegraph Companies—Degree of Care.**

Telegraph companies are common carriers of telegraph messages, and are in duty bound to receive messages tendered with legal charges, and must, in their efforts to promptly transmit and deliver, use ordinary care.

**3.—Proximate Cause—Charge.**

The court charged the jury that even though defendant's lines were out of use without fault on its part, still, if defendant's agent knew of this fact and failed to notify the sender at the time the message was received, the defendant would be liable. Held, error, because there was no evidence that but for the silence of the agent the plaintiff could and would have secured the postponement of the funeral in some other way.

Appeal from the District Court of Grimes County. Tried below before Hon. T. C. Buffington, Special Judge.

*Geo. H. Fearons, N. L. Lindsley, J. W. Lewis* and *Dean, Humphrey & Powell,* for appellant.—The court erred in that portion of the general charge to the jury as follows: "Parties sending messages over telegraph lines have the right to designate the route by which his message must be sent, and the telegraph company is compelled to carry out the instructions of the party sending said message;" because said portion of the court's charge is not a correct statement of the law, is inapplicable to the facts of this case, is unintelligible and imposes upon the telegraph company more onerous duties and obligations than are required of it by the law, and makes a telegraph company the insurer under all conditions of the safe transmission of the message along the route designated by the party tendering it for transmission and delivery. Western U. Tel. Co. v. Burns, 70 S. W. Rep., 784; Hargrave v. Western U. Tel. Co., 60 S. W. Rep., 688; Western U. Tel. Co. v. Cox, 74 S. W. Rep., 922.

The court erred in the following portion of the general charge to the jury, to wit: "Telegraph companies are considered common carriers of telegraph messages and are bound to receive and transmit and deliver all messages when offered when all legal charges are paid, and must use due care, promptness and diligence in the transmitting of all messages received by said telegraph company;" because said portion of the court's charge is not a correct statement of the law, is inapplicable to the facts of this case, imposes a greater duty upon telegraph companies than is required by the law and its contract, and makes a telegraph company the insurer of the transmission and delivery of all messages offered it, when the legal charges are paid therefor; and said portion of the charge is not corrected and could not be corrected by any other portion of the charge. Western U. Tel. Co. v. Edsall, 63 Texas, 668; Western U. Tel. Co. v. Hays, 63 S. W. Rep., 171; 25 Am. and Eng. Ency. of Law, 747-48 (1st ed.), and notes 2 and 3 on page 748; Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 349.

The court should have instructed the jury that the defendant was required to use ordinary care and diligence in the transmission and delivery of the message tendered it, and the substitution by the court of the duty to use due care, promptness and diligence followed by the incorrect definition of due diligence was erroneous and could have had no other effect than to confuse and mislead the jury. Western U. Tel. Co. v. Burns, 70 S. W. Rep., 784; Hargrave v. Western U. Tel. Co., 60 S. W. Rep., 688; Western U. Tel. Co. v. Cox, 74 S. W. Rep., 922.

*Geo. D. Neal* and *John M. King,* for appellee.—The language of the court will be given its natural meaning and import, and in the charge complained of, the language: "The telegraph company is compelled to carry out the instructions of the party sending said message," taken in connection with the preceding language of the same paragraph, could only be construed to mean that the telegraph company was bound by the routing of the message. Western U. Tel. Co. v. Turner, 94 Texas, 304; Western U. Tel. Co. v. Sims, 69 S. W. Rep., 464.

While the court charged the jury in the paragraph complained of that telegraph companies are common carriers of telegraph messages, and are bound to receive, transmit and deliver, it explains and limits the language so used by the succeeding language of the same paragraph, in that it tells the jury that in the transmission and delivery of messages, telegraph companies are required to use due care, promptness and diligence, and the court further defines what it means by due diligence.  Texas & P. Ry. Co. v. Nix, 23 S. W. Rep., 328; Jones v. Shaw, 41 S. W. Rep., 690; Western U. Tel. Co. v. Redinger, 54 S. W. Rep., 417; Western U. Tel. Co. v. Adams, 12 S. W. Rep., 857; Western U. Tel. Co. v. Hines, 54 S. W. Rep., 627; Gulf, C. & S. F. Ry. Co. v. Wilson, 69 Texas, 739.

GILL, CHIEF JUSTICE.—W. L. McDonald sued the Western Union Telegraph Company for damages for mental anguish occasioned by the failure of the company to deliver a message requesting the postponement of his father's funeral until his arrival.  He averred that but for the fault of the company the funeral would have been postponed one day and he would have been present.

The company defended upon these grounds:

First.  Because, by reason of rains, storms and other causes beyond its control, its wires were useless almost the entire day the message was tendered and that the message was delivered as promptly as possible after the wires came into use again.

Second.  The plaintiff was advised of these conditions when the message was tendered and the company accepted it subject to delay.

Third.  The plaintiff routed the message via Plantersville, thence over a telephone line to its destination, and that the telephone line was down or out of use the entire day of the date of the message.  That defendant neither owned nor controlled the telephone line, and owed plaintiff no greater duty under its contract than to exercise ordinary care to have the message transmitted thereover.

The cause was submitted to a jury which found for plaintiff, and from a judgment upon that verdict defendant has appealed.

General J. G. McDonald, who lived at Anderson, Texas, died on March 11, 1903.  W. L. McDonald, the plaintiff in this case, is his son, and on that day was in Meridian, Mississippi, where he had been since the preceding day.  While there he was advised that his father was dying.  He wired his brother, J. G. McDonald, Jr., at Anderson, Texas, in substance that he was advised of his father's illness; would leave at once for Anderson via Shreveport, and requested his brother to wire him at Shreveport the condition of his father.  He then proceeded to Shreveport, but on account of washouts he did not reach there until 2 o'clock a. m. of the 13th of March.  He had to remain at Shreveport, Louisiana, until 7 a. m. before he could get a Texas train.  During that time he received a message advising him that his father had died on the 11th and would be buried on the 13th at 10 o'clock, a. m.  Just before leaving Shreveport he tried to get a message out, but the conductor would not hold the train, and advised him to send it from the next station in the direction of Logansport.  Between Shreveport and Logansport he tendered his message at two places, but in

each instance his message was declined because the wires were out of use. At Logansport he tendered to the agent of defendant the following message:

"J. G. McDonald, Anderson, Texas.

"Missed connection. Postpone funeral until tomorrow. Arrive tonight at midnight. Rush.

(Signed)     W. L. McDonald."

Up to this point the facts appear without dispute.

The agent who received this message for transmission testified that he advised plaintiff that the wires were not working, and suggested that he try another office further in the direction of Houston. That plaintiff insisted that the agent take it and send it as soon as he could, and that thereupon the message was accepted subject to delay, and plaintiff paid the defendant's charges and 25 cents for transmission over the telephone from Plantersville to Anderson.

Plaintiff testified that defendant's agent at Logansport stated that he had one wire working, and that he accepted the message unconditionally as regards the condition of the wires. Plaintiff testified that he routed the message via Navasota. Defendant's agent testified it was routed via Plantersville, and other evidence showed that the latter place was the end of the company's line in the direction of Anderson, and that Plantersville was the customary and official routing for Anderson messages. Defendant's line to Plantersville passed through Navasota. The telephone line from Plantersville to Anderson was out of use during the entire day of March 13. There was a telephone line from Navasota to Anderson which remained in good working order that day. By 6:30 p. m., March 13, the wires to Logansport were restored and the message sent. It reached Navasota after the Plantersville office had been closed, so the agent of defendant at Navasota used the phone from that point to Anderson. The message did not reach Anderson until after the body of General McDonald had been buried. The interment, though fixed to occur at 10 o'clock, a. m., March 13, did not in fact take place until 3:00 p. m. of that day. The plaintiff arrived at Anderson the night of the 13th.

Defendant adduced evidence tending to show that it had exercised due care to keep its lines in order and to restore them promptly when for any cause they were disturbed.

By the first assignment appellant complains of the part of the court's charge which instructed the jury in effect that "parties sending messages have the right to designate the route by which his message must be sent and the telegraph company is *compelled* to carry out the instruction of the party sending such message." The objection is to the word compelled, which we have italicised above. If the charge means no more than that the defendant was under the duty to observe the routing, and adopt no other route, it correctly states the law. Where a message is destined beyond the lines of the receiving company the sender has the absolute right to select the connecting route. (27 Am. and Eng. Ency. of Law, 1059; Western U. Tel. Co. v. Simms, 30 Texas Civ. App., 32; Western U. Tel. Co. v. Turner, 94 Texas, 304.) And if

the company undertakes to use a different line it is no defense that the line selected was out of order. (Turner's case, *supra.* Nor, on the other hand, is it the duty of the company to adopt a different route unless when the message is sent the company shows that the route selected by the sender is not open. (27 Am. and Eng. Ency. of Law, 1059; Simms case, *supra.*) While it is true that in the use of the route selected the company is held only to ordinary care, we think the charge complained of, construed in the light of its context, imposed no higher duty. We therefore decline to sustain the particular objection urged.

As the relation of the use of the selected connecting line arises in a more important particular applicable to another phase of this case, we will discuss it further in that connection.

In a paragraph of the charge, which is the subject of the second assignment, the court instructed the jury that telegraph companies are considered common carriers of telegraph messages, and are bound to receive, transmit and deliver all messages when offered when the legal charges are paid, and must use due care, promptness and diligence in the transmitting of all messages received by the company.

The objection is that the charge imposes the absolute duty to receive, transmit and deliver. Such companies are in duty bound to receive messages tendered with legal charges, and must, in their efforts to promptly transmit and deliver, use ordinary care. The portion of the charge in question, though perhaps not material error in the light of the entire document, is at least inaccurate. Upon another trial we suggest that the rule defining the company's duty be accurately stated. The court's definition of ordinary care is subject to a like criticism, and we recommend the use of approved definitions. We do not decide, however, that upon either of these points the error is so material as to call for a reversal of the judgment. The case is remanded upon other errors.

The sixth assignment is meritorious. It is addressed to a portion of the court's main charge by which the jury were in effect instructed that even though the defendant's wires were out of use by force of conditions over which the company had no control (acts of God), still, if defendant's agent at Logansport knew of these conditions when the message was accepted for transmission and failed to advise plaintiff thereof, the defendant would be liable for plaintiff's failure to attend his father's funeral. Even if the failure of the agent to advise the sender of the useless condition of the wires be an actionable wrong, no recovery could be had for damages not proximately flowing therefrom. The plaintiff could not have been damaged (beyond the fees paid) on account of the agent's alleged wrongful act in this respect unless he was thereby induced to abandon the use of other effective means to forward his message in time, and it is not shown by any evidence that, but for the silence of the Logansport agent as to the condition of defendant's lines, plaintiff could and would have secured the postponement of the funeral in some other way. The error is obvious and most material. The charge is also erroneous because it ignores another defense in the case. Even if the lines of the defendant had been useless and their condition due to the negligence of the company, or if the agent negligently failed to

advise the sender of the disabled condition of the wires but for which he would have sent the message from some point further along defendant's line, still there could be no liability with respect to the failure to postpone the funeral if the message was routed by Plantersville, for the undisputed proof is that the telephone line from Plantersville was down during the entire day. The question of whether plaintiff could or would have sent a later message which would have reached its destination in time becomes all the more important in view of the fact that according to plaintiff's statement he tendered his message at Logansport at 9:30 a. m. of March 13, when he knew the funeral had been set for 10 a. m. of that day. The message was actually sent from Logansport at 6:30 p. m. and the funeral occurred at 3 p. m. of the same day. The routing of the message is unimportant, therefore, except upon the theory that if routed by the sender via Plantersville the defendant would in no event be liable, because at no time during that day was transmission possible over the telephone line from that point. If not routed that way, then the liability of the company would depend either on a showing of negligence on its part with respect to the condition of its wires, or else that the Logansport operator failed to advise the sender of the disabled condition of the wires and the sender was thereby prevented from securing the postponement of the funeral in some other way.

We are also of opinion the evidence presents the issue as to whether the funeral would have been postponed had the message in question reached its destination on March 13, prior to the interment.

What we have said disposes in a general way of all the questions made upon this appeal and which are likely to arise upon another trial. The assignments presenting other questions are either immaterial or without merit and are therefore overruled.

For the reasons given, the judgment is reversed and the cause remanded.

*Reversed and remanded.*