WESTERN UNION TELEGRAPH CO. v. FEDEROLF.

(Court of Civil Appeals of Texas. San Antonio. March 6, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 37*) — MESSAGE — NONDELIVERY — NOTICE OF IMPORTANCE.

A telegram reading: "Cannot sell to trade over ninety cents to one dollar. If satisfactory ship minimum car quick this basis"—gave notice on its face that it concerned the shipment of some article which might require immediate attention.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

2. TELEGRAPHS AND TELEPHONES (§ 70*)— NONDELIVERY OF MESSAGE — DAMAGES — MEASURE—LOSS OF PERISHABLE ARTICLES.

The measure of damages for failure to deliver a telegram, whereby a party lost an opportunity to sell a car of sweet potatoes, which rotted on hand as a result, was their value at the time and place of delivery, with interest, less the proper charges for transportation.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 71; Dec. Dig. § 70.*]

3. TELEGRAPHS AND TELEPHONES (§ 66*)— NONDELIVERY OF MESSAGE—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action to recover for loss of a sale of sweet potatoes from failure to deliver a telegram, evidence *held* sufficient to sustain a finding that the plaintiff used due diligence to otherwise dispose of them before they rotted.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

4. TELEGRAPHS AND TELEPHONES (§ 67*)— MESSAGE—FAILURE TO DELIVER—CONTEMPLATED DAMAGES.

Where a telegram which was not delivered gave notice on its face that it related to the disposition to be made of some article needing immediate attention, the loss of a car of sweet potatoes from decay was a direct consequence reasonably to be contemplated by the telegraph company from its failure to deliver the telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

5. DAMAGES (§ 62*)—NONDELIVERY OF TELEGRAM—MITIGATION—DUTY.

Where a party lost the sale of a car of sweet potatoes by a telegraph company's failure to deliver a telegram, the rule, requiring one to make a reasonable effort to avoid and mitigate a loss, did not require him to ship the potatoes to be handled on commission, or to dispose of them otherwise than to actual purchasers.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–132; Dec. Dig. § 62.*]

6. DAMAGES (§ 62*)—NONDELIVERY OF TELEGRAM—MITIGATION—DUTY.

Where the potatoes spoiled before he learned that the telegram had not been delivered, such rule was inapplicable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–132; Dec. Dig. § 62.*]

7. TELEGRAPHS AND TELEPHONES (§ 66*)— NONDELIVERY OF MESSAGE—DAMAGES—EXPENSES—PRESUMPTION.

In determining the amount of recovery for loss of perishable produce from failure to deliver a telegram, there was no presumption that the plaintiff would have been to any expense in getting the produce from his farm and loading it for shipment.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

Appeal from Bexar County Court; Geo. W. Huntress, Judge.

Action by George Federolf against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Webb & Goeth, for appellant. W. H. Lipscomb, Marcus W. Davis, and Bryan F. Williams, for appellee.

JAMES, C. J. This action was against the Telegraph Company for damages alleged to have been sustained by Federolf for the failure of defendant to deliver to him the following telegram, sent from San Antonio on or about April 11, 1907: "Cannot sell to trade over ninety cents to one dollar. If satisfactory ship minimum car quick this basis. Western Grocer Co."

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The petition alleged plaintiff was engaged in farming near Brownsville, and in shipping vegetables and produce to San Antonio and other points; that if said telegram had been delivered he could and would have shipped to the Western Grocer Company at San Antonio, and could and would have sold at San Antonio, one car of sweet potatoes for not less than $540 more than he could have disposed of them for at the time he learned of said telegram, and as the result of defendant's failure the said potatoes rotted and became worthless, and he sustained damage in that sum; that the car of potatoes which he would have so shipped to San Antonio would have consisted of 400 bushels; that the same would have arrived in San Antonio on or about April 15, 1907, and could and would have been sold in the market there for not less than $1.35 per bushel, their reasonable value at the time. The answer was a general demurrer and denial.

[1] The first assignment alleges that the court erred in overruling the general demurrer, because there was no allegation charging defendant with notice of the fact that the potatoes would rot; nor did it show that such fact was in the knowledge of the sender, or that appellant could have gained such information by inquiring of the Western Grocer Company. The face of this message was sufficient to suggest that it involved the disposition of a commodity of some kind which might require immediate attention. That it concerned a shipment of a perishable article could have been readily learned. Under the following decisions, the demurrer was properly overruled. Western Union Tel. Co. v. Turner, 94 Tex. 304, 60 S. W. 432; Western Union Tel. Co. v. Sheffield, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790; T. & W. Tel. Co. v. Mackenzie, 36 Tex. Civ. App. 178, 81 S. W. 583; Post. Tel. Co. v. Levy, 102 S. W. 136. This view leads also to the overruling of the third assignment and the third proposition under the fourth assignment.

[2] Under the second assignment, appellant presents this proposition: "The measure of damages for failure to deliver a telegram, whereby a party loses an opportunity to sell produce, etc., would be the difference between the market price of the commodity at the time the same would have been shipped and marketed, if the telegram had been delivered, and the price it would have brought, if the same, by the exercise of ordinary care and diligence, had thereafter been marketed." This measure is not applicable to a case where the act complained of is responsible for a loss of the property which would otherwise have been sold. In such case, the measure of damage is the value at the time and place of delivery, with interest less the proper charges for transportation. Railway v. Ball, 80 Tex. 603, 16 S. W. 441; Railway v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776. This requires the overruling, also, of the first proposition under the fourth assignment.

[3] Under other assignments, it is insisted, in effect, that, because there was evidence that there was a constant market in San Antonio for sweet potatoes, and therefore plaintiff could have shipped and sold his potatoes in that market before they spoiled on his hands, notwithstanding the failure to deliver the telegram, he cannot recover for the total loss, not having availed himself of the market. Plaintiff testified: "I did not know of any market for sweet potatoes other than San Antonio. After trying all the different cities in Texas at or after the above date [April 11th, the date of the telegram], * * * on April 11, 1907, or for at least 10 days thereafter, I had on hand ready for market between four and five car loads of sweet potatoes averaging about 400 bushels per car load, and, as I was unable to find a market for same, or to dispose of them in any way, they rotted in the fields." This was testimony that he had made diligent effort to dispose of them in all the markets. There is some corroboration of an effort to sell his potatoes in San Antonio. The telegram in question appears to have been in reply to one from him, seeking to dispose of them, and was for only one car load, and a minimum one at that. He never heard from his telegram until after his potatoes had spoiled. And there was testimony that he made other shipments to San Antonio. The court was authorized to find that he had used diligence to make sale of his potatoes in San Antonio.

[4] The case is simply this: Plaintiff wanted to sell his potatoes, applied to the Western Grocer Company for the purpose, and would have shipped and sold one car load for $1 per bushel, had the telegram in question been delivered, and, as a direct consequence of the failure to deliver it, that quantity was totally lost to him. That such direct consequence, with regard to perishable produce, might be reasonably contemplated from a failure to convey the telegram, it seems to us, cannot be denied.

[5, 6] What has been said sufficiently disposes of the matter. But defendant's contention proceeds upon the theory that plaintiff did not have the right to conduct his business in his own way. It must be admitted that he owed defendant no duty, if there was a market for his potatoes in San Antonio, to ship them there, to be handled by commission merchants for what they would bring. He had the right, in the management of his own business, to not ship the potatoes at all, unless he could first find purchasers for them. After failure to deliver the telegram in question, and thereby losing him a sale he had arranged, defend-

aut was in no position to say to him that he should have been a better business man, or should have been using a different method of carrying on his business, by which he could have prevented or lessened his loss; and therefore he cannot complain of the particular loss it caused him. Appellant probably has in mind the rule which requires a party to do what is reasonable and proper, under the circumstances of a particular injury, to avoid or mitigate his loss. This rule can apply only to cases in which the party knows of the injury. In this case, when plaintiff found out that the telegram ordering this car had been sent, the potatoes had spoiled.

[7] The fifth assignment contends that in no event could plaintiff recover more than the price of the potatoes, less the freight and the reasonable cost of handling and otherwise preparing them for market. The court gave judgment for the price the potatoes would have sold for, less the freight charges. Appellant says that the further deduction should have been of the cost of hauling the potatoes from plaintiff's farm and loading them on the train at Brownsville. There was no testimony of expense in hauling to the train and loading thereon. Such expense, if any had been shown, should have been deducted; but, in absence of some testimony on the subject, it cannot be presumed that a farmer, whose business is to ship his products on trains, is not already equipped to get them to his station. Expense in such matter is not necessarily involved.

Affirmed.