KANSAS CITY, M. & O. RY. CO. et al. v. BELL. (No. 1212.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1917.)

1. CARRIERS ⬤➝229(1) — LIVE STOCK — DELAY IN TRANSPORTATION—DAMAGES.

In an action for delay in transportation of hogs intended for exhibition purposes, damages for loss of chance of winning prize money are not too remote and speculative.

2. CARRIERS ⬤➝228(3)—DELAY IN TRANSPORTATION—EVIDENCE—DAMAGES.

In an action for damages for delay in transportation of hogs intended for exhibition purposes, evidence tending to show probability of plaintiff having been successful competitor for prize money is admissible.

3. EVIDENCE ⬤➝471(2) — OPINION — ADMISSIBILITY.

Evidence that hogs delayed in transportation and intended for exhibition purposes would have taken first premium was properly excluded as stating a conclusion.

4. CARRIERS ⬤➝229(3) — DELAY IN TRANSPORTATION—DAMAGES.

In the absence of notice that hogs are intended for exhibition purposes, carrier is not responsible in damages for loss of prize money caused by delay in transportation.

5. CARRIERS ⬤➝229(3)—LIVE STOCK—LIABILITY FOR DELAY.

General notice to the carrier that hogs are to be transported for exhibition purposes is sufficient to authorize recovery of damages for loss of prize money caused by delay in transportation.

6. CARRIERS ⬤➝229(4)—CONNECTING CARRIER —BILL OF LADING.

Under Rev. St. arts. 731, 732, providing for through transportation and that either connecting carrier shall be liable to the shipper for negligent loss or delay, notice to initial carrier that hogs shipped on through bill of lading are intended for exhibition purposes is notice to connecting carrier.

7. CARRIERS ⬤➝229(4) — TRANSPORTATION OF LIVE STOCK—JOINT CONTRACT.

Under joint contract for shipment of hogs knowledge of one carrier that they are for exhibition purposes binds the other.

8. CARRIERS ⬤➝229(4) — TRANSPORTATION OF LIVE STOCK.

Rev. St. arts. 731, 732, is inapplicable to a carrier transporting hogs under separate contract, and such carrier is not chargeable with knowledge of carrier from whom it received shipment that hogs are intended for exhibition purposes.

9. CARRIERS ⬤➝229(2) — TRANSPORTATION OF LIVE STOCK—DAMAGES.

That hogs were shipped for exhibition purposes, and not immediate sale, does not affect application of ordinary rules for assessing actual damages for negligence in the shipment.

10. CARRIERS ⬤➝228(3) — CARRIAGE OF LIVE STOCK—DAMAGES.

In action for damages for delay of shipment of hogs intended for exhibition purposes, allegations and proof of what hogs sold for several days after arrival at destination and after being on exhibition does not furnish proper facts for assessing actual damages.

11. CARRIERS ⬤➝229(2)—DELAY IN TRANSPORTATION—EXCESSIVE DAMAGES.

Where it was alleged that hogs delayed in transportation lost 25 pounds per head and their value depreciated 25 cents per hundredweight because thereof, a verdict for more than amount that total weight lost would be, figured at highest price per pound, is excessive.

Appeal from Foard County Court; G. L. Burk, Judge.

Action by W. S. Bell against the Kansas City, Mexico & Orient Railway Company and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

D. J. Brookreson, of Benjamin, J. A. Clarke, of Quanah, and Thompson, Barwise & Wharton, of Ft. Worth, for appellants. Robt. Cole, of Crowell, for appellee.

BOYCE, J. This suit was brought by appellee, Bell, against the Kansas City, Mexico & Orient Railway Company and Ft. Worth & Denver City Railway Company, for damages for delay in a shipment of hogs over said roads from Crowell to Ft. Worth. From a judgment in the court below both roads have appealed, and by separate briefs present numerous assignments of error. We will not attempt to consider these assignments separately, but will dispose of them in a general discussion of the questions raised thereby.

The hogs were shipped for exhibition at the Ft. Worth Stock Show, and appellee recovered $225 damages for failure to get the first premium of $300, his hogs having taken second premium of $75, which he claimed he would have received but for the effect of delay in the shipment on the appearance and condition of his hogs. Appellants assert by various assignments that such damages are not recoverable because they are too remote and speculative.

[1] An analysis of the authorities on this question may be found in Sutherland on Damages (4th Ed.) § 71. According to this authority, it is now the rule in England, established by the case of Chaplin v. Hicks (1911) 2 K. B. 786, that, where one by the wrongful act of another is deprived of the opportunity of competing in a contest where prizes are to be awarded to successful contestants, he may recover the value of the opportunity to compete. In the case of Adams Express Co. v. Egbert, 36 Pa. 360, 78 Am. Dec. 382, it was recognized that the plaintiff, in a proper case, might recover the value of his opportunity to compete, where by wrongful act the defendant deprived the plaintiff of this opportunity. In the case of

---

⬤➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ft. Worth & Denver City Ry. Co. v. Ikard Co., 140 S. W. 502, where the plaintiff had recovered $110, "for damages sustained in the loss of prizes which it was claimed the cattle would have taken," it was held that: "Under the pleadings and evidence the defendant was not entitled to recover the damages for loss of prize money."

In the case of Western Union Telegraph Co. v. Crall, 39 Kan. 580, 18 Pac. 719, it was held that: "No damages ought to have been allowed, based upon the probability of the horse being able to win prizes in trotting races."

Frequently preparations are made at considerable expense for entry in exhibitions and contests, where prizes and premiums are to be awarded, and it appears to us that the chance which a competitor has of being awarded a prize or premium in such contest is a right which may be of value, and that one wrongfully impairing or destroying such right ought to be held liable therefor in damages.

[2] It is true that it is difficult to determine the value of this chance, but ordinarily difficulty in ascertaining the amount of damages resulting from the violation of a right is not an insuperable obstacle to recovery. The chance might be worth little or nothing, or it might be worth, under some circumstances, the full amount of the premium offered for the best of the class in which plaintiff was to be a competitor. In such a case, evidence as to all such matters as would tend to show the probability that the plaintiff would be successful in the competition would be admissible, and, as one of the judges in the English case says, it would then be left to the good sense of the jury trying the case to determine the value of the plaintiff's chance in the competition. If any recovery in such cases can be had at all, it would evidently be only on this theory, and not on the theory on which plaintiff proceeded in this case.

[3] The testimony of the plaintiff, and one other witness, that the hogs would have taken the premium, was inadmissible. Under any theory of recovery of such damages, such testimony would be inadmissible as being a conclusion, and the testimony should be confined to a statement of the facts, so that the jury might reach its own conclusion as to such matter.

[4, 5] Such damages are, of course, special, and the defendants would not be liable unless at the time of the making of the contract for carriage they had such notice as would charge them with knowledge that damages of such a character might be reasonably anticipated as a result of the wrongful breach of the contract. The petition charges that the plaintiff notified the Kansas City, Mexico & Orient Railway Company that the hogs were being shipped to Ft. Worth for exhibition at the National Feeders' & Breeders' Show, and the evidence supports this allegation. We think this general notice was sufficient as to the Kansas City, Mexico & Orient Railway Company, as it is not necessary in such cases that the parties sought to be charged be informed of all of the details of the particular situation of the other party to the contract, and of the damages that might result from a breach. Sutherland on Damages, 969, 970; Western Union Telegraph Co. v. Edsall, 74 Tex. 329, 12 S. W. 41, 15 Am. St. Rep. 835; Western Union Telegraph Co. v. Turner, 94 Tex. 304, 60 S. W. 432; Western Union Telegraph Co. v. Sheffield, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790.

[6-8] If the shipment had been made on a through bill of lading issued by the Kansas City, Mexico & Orient Railway Company, and acquiesced in by the Ft. Worth & Denver City Railway Company, the latter road would have been bound by the notice to the former. R. S. arts. 731, 732. Or, if the contract was a joint contract, each of the defendants would be bound by the knowledge of the other. G., C. & S. F. Ry. Co. v. Nelson, 139 S. W. 81. However, the record shows that a separate contract was made with the Denver for shipment from Chillicothe, at which point it received the shipment from the Kansas City, Mexico & Orient, and the shipment would not come within the provisions of the statute above referred to. G., H. & S. A. Ry. Co. v. Jones, 134 S. W. 328; G., C. & S. F. Ry. Co. v. Short, 51 S. W. 262; S. A. & A. P. Ry. Co. v. Turner, 42 Tex. Civ. App. 532, 94 S. W. 214; Elder, Dempster & Co. v. St. Louis & S. W. Ry. Co., 105 Tex. 628, 154 S. W. 985. Notice therefore to the Kansas City, Mexico & Orient Railway Company would not be sufficient to charge the Ft. Worth & Denver City Railway Company, and it would not be liable for special damages unless notice to it was shown at the time of the making of the contract of shipment with it.

[9, 10] The fact that plaintiff did not expect to put the hogs on the market immediately upon their arrival at Ft. Worth would make no difference in the application of the ordinary rule for assessing actual damages for negligence in the shipment. G., C. & S. F. Ry. Co. v. Stanley, 89 Tex. 42, 33 S. W. 109; P. & N. T. Ry. Co. v. Holmes, 177 S. W. 507; M., K. & T. Ry. Co. v. Mulkey & Allen, 159 S. W. 111. The allegations, therefore, and proof of what the hogs sold for several days after their arrival at Ft. Worth and after they had been placed on exhibit at the stock show, would not furnish the proper facts for assessing such damages, and the testimony as to the weight of the hogs some days after their arrival at Ft. Worth would only be admissible for the purpose of ascertaining their weight upon arrival and in connection with testimony that would show the treatment they received in the interim and its effect on their weight.

If appellee was present and saw the hogs weighed, and thus knew their weight, he could testify to such fact; but, if he depended for his knowledge upon information gained from others, the testimony would be hearsay and inadmissible.

[11] The amount awarded as the actual and direct damages is not sustained by the evidence. It was alleged that the hogs lost 25 pounds per head and the value thereof depreciated 25 cents per hundredweight. While there was evidence as to the loss in weight, caused by the delay, there is no evidence as to the depreciation in value per hundredweight of the actual weight of the hogs on arrival, and as the judgment is for more than the amount that the total weight of the hogs lost would be, figured at the highest price per pound, the verdict is to the extent of such amount excessive under the evidence.

Reversed and remanded.

⬤⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes